JEFFREY HAYNES, Plaintiff-Appellant, v. TRU-GREEN CORPORATION, Defendant-Appellee.

Fourth District  No. 4—86—0601

Opinion filed May 4, 1987.

968

Joseph D. Pavia, of Kirtley-Pavia-Marsh, P.C., of Urbana, for appellant.

James C. Kearns and Robert J. Bassett, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff sued his former employer, Tru-Green Corporation (Tru-Green), for unpaid overtime, liquidated damages, attorney fees, and costs under the provisions of the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. sec. 201 *et seq.* (1982)). He also sought recovery under sections 4a and 12 of the Minimum Wage Law (Ill. Rev. Stat. 1985, ch. 48, pars. 1004a, 1012). The trial court found for defendant. Plaintiff appeals. First, he argues that the trial court erred in finding that his overtime compensation complied with section 778.114 of the

regulations of the Wage and Hour Division of the Department of Labor interpreting the FLSA (regulations). (29 C.F.R. sec. 778.114 (1986).) Second, he argues that the trial court erred in finding that his overtime compensation complied with section 4a of the Minimum Wage Law.

We affirm.

Tru-Green is a Michigan-based, lawn-care specialty firm which has offices in Michigan, Ohio, Wisconsin, Minnesota, and Illinois. Michael Almli testified that he worked for Tru-Green from 1978 until the last day of April in 1984. Tru-Green first employed him as a lawn-care specialist. In 1980, he became manager at the Champaign, Illinois, outlet. He explained the compensation system to his employees and filled out all time sheets. Almli hired plaintiff as a lawn-care specialist in April 1982. The employee compensation plan which Tru-Green started using in 1980 was then in effect.

Almli stated that plaintiff was a salaried employee. He told plaintiff that his salary divided by 52 was his weekly guaranteed salary, whether he worked one hour or 40 hours. He also told plaintiff that overtime was required and during the season, he could expect to work 50 to 70 hours per week. Defendant would receive his weekly guarantee in a regular workweek of 40 hours. He would earn overtime for hours over 40. Almli stated that he also told plaintiff he could probably work less than 40 hours in the winter, with the same salary. Plaintiff never worked under 40 hours per week.

Almli further stated that he explained to plaintiff the method by which the overtime was calculated. At first, he told plaintiff the yearly salary would be divided by 52 to achieve a weekly salary. This salary would then be broken down into an hourly wage. One-half of the hourly wage was the overtime rate, and the more overtime hours worked, the less money would be paid for the overtime. Almli agreed that he told plaintiff the overtime rate was one-half of the regular hourly wage. Additionally, Almli told plaintiff that for the first 40 hours of an overtime week, he would receive his salary divided by 52. Almli did not tell plaintiff that the hourly rate for the first 40 hours would change, depending upon the number of hours he worked in a week. He thought the hourly rate for the first 40 hours always stayed the same.

Almli further stated that when he checked plaintiff's gross wages using this method, he discovered that plaintiff was receiving less than he had calculated. The size of the discrepancy depended upon the number of overtime hours worked. In March 1983, Almli called the Tru-Green corporate offices and talked to the assistant comptroller.

The compensation plan was explained to Almli again. The explanation yielded this formula:

$$\frac{\dfrac{\text{Yearly Salary}}{52}}{\text{Total hours worked}} \times \tfrac{1}{2} = \text{Overtime compensation rate} \times \text{number of overtime hours} = \text{overtime pay}$$

(29 C.F.R. sec. 778.114 (1986).) A table printed by the Federal government explaining the overtime-compensation method was posted on the office wall during plaintiff's employment. The back of the table was not posted.

Almli further stated that he again told plaintiff how the overtime was calculated in March of 1983. He explained to all employees because they had questioned the amount of overtime pay. He asked plaintiff if he understood. Almli stated that he believed none of the employees grasped the method of calculating overtime. He never told plaintiff that his regular rate for the first 40 hours would be determined by dividing the weekly guarantee by the total hours worked. Nor did he tell plaintiff that a part of his weekly guarantee would go toward compensating him for overtime.

On cross-examination, Almli stated that there was never more than one way to compensate lawn-care specialists. Plaintiff's pay fell short only one week during the time he worked for Tru-Green. Almli never told plaintiff that he was an hourly employee or that he had an hourly rate of pay. Almli admitted that although he knew how to work the overtime formula, he never understood that plaintiff was already paid regular time for his overtime hours and therefore entitled to only 50% more for overtime pay.

Plaintiff testified that he was a salaried employee and was told that the nonovertime workweek was 40 hours. His salary divided by 52 was his weekly pay. He was also told that he would work less in winter but still receive his weekly guarantee. Almli told plaintiff that he would receive overtime for any hours worked over 40 hours in one week and that his overtime pay would be one-half his hourly wage. He was not told that his hourly rate for the first 40 hours would vary in an overtime week or that his regular weekly pay applied to his overtime hours as well as nonovertime hours. Plaintiff often tried to calculate his overtime. He discussed the discrepancies with Almli after he received his first paycheck and a few other times.

On cross-examination, plaintiff admitted that Almli told him the first check was correct and explained that the more overtime he worked, the lower his rate of pay for overtime would be. Whenever he talked to Almli, Almli emphasized that plaintiff was on a salary as opposed to an hourly rate. Plaintiff also admitted that he was told overtime was mandatory. When Almli explained the way plaintiff was paid, Almli stated that plaintiff would receive half-time for overtime and the more hours he worked, the lower his rate of pay would be. Plaintiff did not recall the March 1983 employee meeting. Although he did not understand how to use the coefficient table posted in the office, he knew it was the method of calculating overtime pay.

The trial court found that Tru-Green's method of payment fell within the Federal regulations delineating payment methods for employees with fixed salaries and fluctuating hours (29 C.F.R. sec. 778.114 (1986)), that the conditions precedent to using the formula were satisfied, and that plaintiff need not have understood the precise method of payment. The court then found for defendant.

In ruling on plaintiff's motion to vacate the judgment, the judge noted that he had struggled with the "clear and mutual understanding" requirement for application of section 778.114 of the regulations but believed his determination was consistent with the evidence.

The FLSA specifically provides that actions to enforce its provisions may be brought in State or Federal court. (29 U.S.C. sec. 216 (1982).) The crux of plaintiff's argument is that the trial court erred in determining that the requirements for paying overtime based upon a fixed salary for fluctuating hours formula were met, that the requirements should be interpreted in the same fashion as the requirements of section 207(f) of the FLSA (29 U.S.C. sec. 207(f) (1982)), and given that interpretation, the evidence did not support the trial court's determination. Tru-Green maintains that section 207(f) of the FLSA is not applicable, section 207(a) of the FLSA permits the payment plan utilized by Tru-Green, the requirements of section 207(f) of the FLSA are irrelevant, and that the evidence supports the trial court's determination that the requirements, which are predicate to application of section 778.114 of the regulations, were satisfied.

■■ Congress determined that employers involved in interstate commerce must pay their employees premium pay for overtime worked. Section 207(a)(1) of the FLSA provides that employees must receive compensation for hours worked in excess of 40 hours per

week at a rate not less than 1½ times the regular rate at which the employee is employed. (29 U.S.C. sec. 207(a)(1) (1982).) The purpose of the overtime-pay requirement is twofold: (1) to spread employment by encouraging employers to avoid overtime by hiring more workers at regular pay; and (2) where the employer prefers overtime, to compensate the employee for the burden of working additional hours. *Donovan v. McKissick Products Co.* (10th Cir. 1983), 719 F.2d 350; *Donovan v. Brown Equipment & Service Tools, Inc.* (5th Cir. 1982), 666 F.2d 148, 152.

■■ ■ The determination of the regular rate of pay is the critical factor, since that rate determines the amount of overtime pay. Although the "regular rate" is an hourly rate, an employee may be compensated on a piece-rate, salary, commission, or any other basis. (29 C.F.R. sec. 778.109 (1986).) In general, the regular rate is the hourly rate actually paid an employee for the normal, nonovertime workweek. (*Walling v. Youngerman-Reynolds Hardwood Co.* (1945), 325 U.S. 419, 424, 89 L. Ed. 1705, 1709, 65 S. Ct. 1242, 1245; 29 C.F.R. sec. 778.108 (1986).) However, depending upon the nature of the employment, the regulations of the Wage and Hour Division of the Department of Labor provide differing methods of calculating the regular rate of pay. See generally *Clark v. Atlanta Newspapers, Inc.* (N.D. Ga. 1973), 366 F. Supp. 886; 29 C.F.R. secs. 778.108 through 778.114 (1986).

Section 778.114 of the regulations provides that a salaried employee, who has hours of work which fluctuate from week to week and a salary which is paid to him pursuant to an understanding with his employer that he will receive the fixed amount as straight-time pay for whatever hours he is called upon to work in a workweek, may be compensated for his overtime at a rate of 50% of his regular hourly pay. The regular hourly pay is calculated by dividing his regular weekly pay by the total number of hours worked in the week. (29 C.F.R. sec. 778.114 (1986).) This type of compensation plan was specifically approved in *Overnight Motor Transportation Co. v. Missel* (1942), 316 U.S. 572, 580, 86 L. Ed. 1682, 1689, 62 S. Ct. 1216, 1221.

Missel, the employee, worked for a weekly wage but had overtime hours which fluctuated widely. The court stated that it was concerned with the meaning of the phrase "the regular rate at which he is employed" and the method by which the regular rate would be calculated. The court stated:

> "No problem is presented in assimilating the computation of overtime for employees under contract for a fixed weekly

wage for regular contract hours which are the actual hours worked \*\*\*. [However, w]here the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week. As that rate is on an hourly basis, it is regular in the statutory sense inasmuch as the rate per hour does not vary for the entire week, though week by week the regular rate varies with the number of hours worked. It is true that the longer the hours the less the rate and the pay per hour. This is not an argument, however, against this method of determining the regular rate of employment for the week in question." 316 U.S. 572, 580, 86 L. Ed. 1682, 1689, 62 S. Ct. 1216, 1221.

■ The requirements for application of the fluctuating-work-week formula are: (1) the employee work fluctuating hours for a fixed salary; (2) there be a clear and mutual understanding that his salary is compensation for whatever hours he works, few or many; (3) the salary be sufficient to provide compensation at a regular rate of not less than minimum wage; and (4) the overtime premium is not less than one-half the regular rate. *Yadav v. Coleman Oldsmobile, Inc.* (5th Cir. 1976), 538 F.2d 1206; *Rau v. Darling's Drug Store, Inc.* (W.D. Pa. 1975), 388 F. Supp. 877; *Clark v. Atlanta Newspapers, Inc.* (N.D. Ga. 1973), 366 F. Supp. 886; *Marsh v. Minneapolis Herald, Inc.* (Minn. 1965), 270 Minn. 443, 134 N.W.2d 18.

Soon after passage of the FLSA, the Supreme Court recognized that in certain cases, where a salaried employee's work hours were irregular, fluctuating above and below 40 hours, his guaranteed level salary could include an amount which would compensate overtime under 60 hours per week but would not fall short on weeks where the hours fell below 40. (*Walling v. A.H. Belo Corp.* (1942), 316 U.S. 624, 86 L. Ed. 1716, 62 S. Ct. 1223.) The *Belo* exception was enacted into the statute through section 207(f) of the FLSA (29 U.S.C. sec. 207(f) (1982)). (*Donovan v. Brown Equipment & Service Tools, Inc.* (5th Cir. 1982), 666 F.2d 148, 152.) The *Belo* plans provide security for employees by precluding short paychecks and benefit the employer, who need only pay the guaranteed salary for hours worked up to 60 per week.

■ Plaintiff argues that this court should interpret the requirements for application of section 207(a) of the FLSA fluctuating-workweek regulations similarly with the requirements for application of section 207(f) of the FLSA, the *Belo* exception to the overtime provisions contained in section 207(a) of the FLSA. The application

of the "fluctuating-workweek formula" is not dependent upon a finding that the employer is entitled to the *Belo,* section 207(f) of the FLSA, exception to overtime-pay provisions. (*Yadav v. Coleman Oldsmobile, Inc.* (5th Cir. 1976), 538 F.2d 1206.) Often, the courts apply section 778.114 of the regulations when employers do not qualify for a *Belo* exception to the overtime provision. See generally *Triple "AAA" Co. v. Wirtz* (10th Cir. 1967), 378 F.2d 884.

The question presented here is whether the employment arrangement between plaintiff and Tru-Green met the requirements of the fixed salary for fluctuating workweek formula. As noted earlier, the first requirement is that an employee work fluctuating hours for a fixed salary. Plaintiff worked on a salary and knew that his overtime hours would fluctuate widely during the growing season. He argues that the hours must fluctuate above and below 40 hours before this method may be used. He maintains that since he always worked 40 hours, or in excess of 40 hours, the method is inappropriate. Tru-Green responds that "fluctuating hours" under section 207(a) of the FLSA and section 778.114 of the regulations need not vary under 40 hours. We agree.

Prior to application of the *Belo* exception to payment for overtime, the employee's hours must fluctuate above and below 40 hours per week. (*Foremost Dairies, Inc. v. Wirtz* (5th Cir. 1967), 381 F.2d 653.) If the hours only fluctuate in the overtime range, the employee must be compensated pursuant to the provisions of section 207(a) of the FLSA. (*Foremost Dairies, Inc. v. Wirtz* (5th Cir. 1967), 381 F.2d 653.) Section 778.406 of the regulations, which interprets the *Belo* exception, states that when an employee's work hours "fluctuate" only in the overtime range, nothing in the legislative history of section 207(f) of the FLSA suggests an intent to suspend section 207(a) of the FLSA's general overtime provisions. (29 C.F.R. sec. 778.406 (1986).) The requirement of fluctuating hours in section 778.114 of the regulations necessarily implies fluctuation in the overtime-hours range. Additionally, we note that section 778.114 of the regulations provides examples of calculating the overtime premium. All of the examples present situations where the fluctuation is only in the overtime range. (29 C.F.R. sec. 778.114(b) (1986).) Courts have also uniformly applied the fluctuating-hours provisions of section 778.114 of the regulations to situations where the hours only varied in the overtime range. See *Overnight Motor Transportation Co. v. Missel* (1942), 316 U.S. 572, 86 L. Ed. 1682, 62 S. Ct. 1216; *Yadav v. Coleman Oldsmobile, Inc.* (5th Cir. 1976), 538 F.2d 1206; *General Electric Co. v. Porter* (9th Cir. 1953), 208 F.2d 805, 811-12.

Plaintiff next argues that Tru-Green promised to pay him a nonfluctuating regular rate and that there was no clear and mutual understanding that his salary would cover all hours worked, few or many. Plaintiff essentially argues that it was never explained to him that part of his regular salary would be applied to compensate overtime in overtime weeks. He then argues that his payroll record shows a regular, nonfluctuating rate for nonovertime hours. Neither Almli nor plaintiff initially understood the methodology by which the overtime compensation rate was arrived at. Neither understood the legal significance of the phrases "regular rate" and "guaranteed pay." However, plaintiff from his own testimony admitted that the job entailed mandatory overtime, that he was a salaried employee, that the more overtime he worked, the less he would be paid for it, and that his overtime pay would be one-half of his regular rate of pay. Almli stated that he explained the above to plaintiff when plaintiff first started. Almli admitted, however, that he initially thought the rate of pay for the first 40 hours never varied. He thought only the overtime rate varied.

After plaintiff received his first check, plaintiff questioned the amount, and Almli called corporate headquarters. He then told plaintiff the amount was correct. The year after the plaintiff started, the compensation system was explained again using the formula set out by section 778.114 of the regulations. Plaintiff did not remember this meeting or this explanation. However, he agreed that he was told the more overtime he worked the less he would be paid for it.

Employment records are not controlling on the issue of regular rate of pay. (*Overnight Motor Transportation Co. v. Missel* (1942), 316 U.S. 572, 86 L. Ed. 1682, 62 S. Ct. 1216.) It is the actual fact of payment which controls. (*Triple "AAA" Co. v. Wirtz* (10th Cir. 1967), 378 F.2d 884.) Here, plaintiff did not understand the method used to calculate his overtime pay. He did, however, know that his position required overtime and knew that the more overtime he worked, the less he would be paid for it. He knew he was a salaried employee whose salary guarantee would not vary. An employee need not understand the method by which his overtime is calculated prior to a clear and mutual understanding of section 778.114 of the regulations payment method's being found. Case law supports this conclusion as section 778.114 of the regulations is applied to calculate overtime when a salaried employee, working fluctuating hours, successfully challenges an employer's attempt to come under the *Belo* provisions. We cannot say the trial court's determination that a clear and mutual understanding existed is contrary to the manifest weight

of the evidence.

■ Plaintiff next argues that his salary was insufficient to provide compensation at a regular rate of not less than the minimum wage in the week where he worked the most hours. We find the variation was *de minimis*. During the week of April 16, 1983, plaintiff worked 80 hours. His compensation per hour fell a penny short of minimum wage during that week. Tru-Green stipulated that it had made a mathematical error and owed plaintiff 80 cents compensation. The error in the instant case should not invalidate the payment plan. Plaintiff's compensation otherwise equalled one-half of his regular rate of pay which fluctuated from week to week. The trial court's determination that the requirements of section 778.114 of the regulations were satisfied in the instant case is supported by the evidence.

■ Plaintiff next argues that in addition to liquidated and compensatory damages under the FLSA, he is entitled to punitive damages under the Minimum Wage Law (Ill. Rev. Stat. 1985, ch. 48, par. 1001 *et seq.*). Section 4a of the Minimum Wage Law states that no employer, except as provided in the Minimum Wage Law, shall employ any employee for a workweek of more than 40 hours without paying 1½ times the regular rate of compensation as overtime. (Ill. Rev. Stat. 1985, ch. 48, par. 1004a.) The Illinois law parallels the Federal law. Section 200.170 of the Illinois Administrative Code (Code) states that for guidance in interpreting Illinois law, Federal regulations may be used. (56 Ill. Admin. Code 200.170 (1985).) Section 200.420 of the Code, which describes methods of calculating overtime, precisely parallels the Federal regulations. (56 Ill. Admin. Code 200.420 (1985).) The same analysis which applies to a violation of the FLSA applies to State law. Therefore, we find that defendant's payment method complied with the Minimum Wage Law.

For the above reasons, we affirm the trial court.

Affirmed.

GREEN and LUND, JJ., concur.