Melvin RUSHING, Wallace Doss, James Alexander, and John Barnes,

v.

SHELBY COUNTY GOVERNMENT, and Jim Rout in his official capacity as Mayor of Shelby County, Defendants.

No. 95–2485 V.

United States District Court,
W.D. Tennessee,
Western Division.

July 3, 1997.

---

Mark Allen, Florence Johnson, Curtis Johnson, Memphis, TN, for Plaintiffs.

Louis Britt, Herb Gerson, Memphis, TN, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON LIABILITY

VESCOVO, United States Magistrate Judge.

The plaintiffs, all supervisory employees of the Shelby County Correctional Center in Memphis, Tennessee, filed this lawsuit on May 31, 1995, alleging that the defendants, Shelby County Government, Shelby County Mayor Jim Rout, and the Shelby County Correctional Center,[1] improperly classified them as employees exempt from the overtime pay requirements of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.* ("the FLSA"). Plaintiffs seek compensatory damages for unpaid overtime, liquidated damages in an amount equal to the compensatory, attorney's fees and costs. The parties consented, pursuant to 28 U.S.C. § 636(c), to have all proceedings in the case, including trial and entry of judgment, conducted by a United States Magistrate Judge.

The plaintiffs contend that because defendants subjected them, or other officers in the same job classifications, to disciplinary suspensions without pay for less than a full workweek, their salaried or exempt status was destroyed and the defendants are therefore required to pay overtime salary for all the hours the plaintiffs worked in excess of a 41 hour workweek.[2] According to plaintiffs, they have worked 42 to 45 hours per week and have never been compensated for more than 40 hrs per week. They claim they are due overtime pay at the rate of one and one-half times their normal hourly rate. Plaintiffs further contend that the three year statute of limitations for willfulness is applicable, and therefore, they are entitled to overtime from May 31, 1992, three years preceding the date of filing of the lawsuit, through the date of trial.

Defendants argue, on the other hand, that plaintiffs' salaries were intended to compensate them for all hours worked including daily eight hour shifts, twenty minutes pre-shift roll calls, ten minute post-shift duties, and mandatory meetings. In calculating the amount of overtime worked, defendants submit that thirty minutes each day should be excluded for lunch breaks. Further, if any overtime pay is due, defendant assert an additional amount calculated at the rate of only one-half the plaintiffs' normal hourly rate is due since the plaintiffs' salaries compensated them for all hours worked. In addition, defendants argue their conduct was not willful; therefore, the normal two-year statute of limitations governs, and overtime, if any is due, should only be awarded from May 31, 1993, two years preceding the filing of the complaint through June 7, 1995, the last day of any disciplinary suspension imposed on an employee in plaintiffs' job classifications.

Before trial, the court granted partial summary judgment on two issues. First, the court held plaintiffs were not exempt employees and were therefore subject to the overtime pay requirements of Section 207(a)(1) of the FLSA because defendants imposed disciplinary suspensions without pay on employees in their job classifications for less than a full workweek in violation of 29 C.F.R. 541.118(a). (Order Granting Partial Summary Judgment to Plaintiffs on the Issue of Liability to the Extent of the Executive Exemption Defense, January 3, 1996.) Second, the court ruled defendants were entitled to claim a partial exemption under 29 U.S.C. § 207(k) for law enforcement personnel which establishes a threshold of 41 hours per workweek before overtime is due. (Order Granting in Part and Denying in Part Defen-

---

1. Shelby County Correctional Center was dismissed as an inappropriate defendant early in this case. (Rule 16(b) Scheduling Order, Order Setting Trial and Pretrial Dates, Order Dismissing Shelby County Correctional Center as Defendant, July 19, 1995.)

2. The complaint alleged a 37.5 hour workweek. (Complaint, ¶ 4.) Plaintiffs later revised their allegations to a 40 hour workweek. (*See* Order Granting Partial Summary Judgment to Plaintiffs, January 3, 1996.) The court then determined that a 41 hour workweek was applicable. (Order Granting in Part and Denying in Part Defendants' Motion to Reconsider Order on Cross Motions for Summary Judgment, July 16, 1996.)

dants' Motion to Reconsider Order on Cross Motions for Summary Judgment, July 16, 1996.)

A bench trial was held on April 29, 1997, through May 2, 1997, to determine the following remaining issues:

1. Whether plaintiffs worked in excess of 41 hours in any one workweek, the threshold level under § 207(k) of the FLSA for payment of overtime?

2. If so, how much were plaintiffs entitled to be compensated for overtime?

a. What was the plaintiffs' regular rate of pay?

b. Were plaintiffs entitled to compensation for meal periods?

3. Whether the defendants' conduct in disciplining exempt employees for periods of less than a full workweek constituted a willful violation of the FLSA?

4. Whether plaintiffs were entitled to attorney's fees, and if so, what amount?

At the close of the plaintiffs' proof, defendants moved *ore tenus* for a judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. For the reasons stated orally on the record, the court entered partial judgment in favor of defendant on the issues of willfulness and statute of limitations. Accordingly, the court ruled that defendants acted in good faith and that the two-year statute of limitations applied in this case. Thus, the appropriate statute of limitations is two years preceding the filing of the lawsuit, making May 31, 1993, the starting date for purposes of calculating damages.

After considering all the evidence, the stipulations between the parties, the statements and the arguments of counsel, and the record as a whole, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

This action was originally brought by plaintiffs Sgt. Melvin Rushing, Sgt. Wallace Doss, Captain James Alexander and Lt. John Barnes. Later, Lt. Sherron Howard was substituted for Lt. Barnes as a named party plaintiff for purposes of discovery and testifying at trial. (*See* Order on Defendant's Motion to Compel, October 15, 1996.) All four plaintiffs are either currently or were previously employed by the defendant Shelby County Correctional Center as supervisory correctional officers in the capacity of sergeant, lieutenant or captain. Plaintiffs first sought class action certification but then entered a stipulation with defendants that all the sergeants, lieutenants and captains employed by SCCC would be bound by the decision made in this case without the necessity of certifying this lawsuit as a class action. This agreement was reduced to a consent order entered August 25, 1995. (Consent Order on Motion for Class Certifications, August 25, 1995.) Additional sergeants, lieutenants, and captains filed forms with the court indicating their consent to be bound by the court's determination in this case. (Pleading Nos. 48, 53 and 57.) There are approximately seventy-one persons in these three job classifications. There are sixty-four consent forms filed with the court, including forms filed by Sgt. Rushing and Lt. Howard.

Defendant Shelby County Government is, and at all times material was, a public agency within the meaning of 29 U.S.C. § 203(r) and (x). It operates a jail, Shelby County Correctional Center, where plaintiffs are or were employed. The Shelby County Correctional Center houses approximately 2,700 inmates and is operational around the clock, seven days per week. Defendant Jim Rout is the mayor of Shelby County Government and the chief policy-making official for the county.

Plaintiffs, as sergeants, lieutenants, and captains, regularly direct the work of correctional officers who are members of Local 1733 AFSCME. Their primary duty is to manage the Shelby County Correctional Center. The Shelby County Correctional Center operates three eight-hour shifts of supervisory officers: 6:00 a.m. to 2:00 p.m.; 2:00 p.m. to 10:00 p.m.; and 10:00 p.m. to 6:00 a.m.

Since at least 1986, in the wake of *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), when the Supreme Court made the FLSA applicable to governmental employees, the defendants have

classified and treated plaintiffs as exempt employees for purposes of determining compensation. Plaintiffs have worked more than 40 hours per week and have never been paid overtime compensation because they were treated as exempt. Also, because plaintiffs were considered to be exempt employees, Shelby County Government maintained time records on the plaintiffs in the manner required by the FLSA for exempt employees, not in the manner and detail required by the FLSA for non-exempt employees.

The last instance of a disciplinary suspension without pay for less than a workweek was imposed on Eva Coburn on May 25, 1995, before the filing of the complaint. The suspension period ended on June 7, 1995. After the complaint was filed, no more disciplinary suspensions for less than a full workweek were imposed.

In addition to regularly scheduled 8–hour shift work, plaintiffs have been required to come to work early before each shift and have been required to stay at work after each shift. At trial, Captain Alexander testified that since 1978, supervisory correctional officers have been required to arrive at work before the shifts began to attend mandatory shift-change, roll-call meetings. The amount of time has fluctuated over the years but since 1992, they have been required to arrive twenty minutes early. Each named plaintiff testified likewise. Sgt. Rushing testified he normally arrived thirty minutes before his shift began, even though he was only required to be present twenty minutes before. Plaintiffs further testified that these mandatory roll calls were held daily before each shift. The defendants offered no proof to the contrary. Based on the testimony of the plaintiffs, the court finds the plaintiffs were required since 1992 to work twenty minutes each day prior to the beginning of their actual shift.

In addition, the plaintiffs were required to stay after the end of the eight-hour shift, at least twenty minutes, in order to complete paperwork and "to make sure their job was done." Lt. Debra Swanson testified that she sometimes stayed up to one hour after the shift ended. This time was used to complete shift logs and incident reports which each supervisory correctional officer was required to submit or face disciplinary sanctions. On direct examination, Captain Alexander testified he always stayed a minimum of twenty minutes but on cross examination, he admitted he sometimes stayed only ten minutes. Lt. Howard, Sgt. Doss, and Sgt. Rushing all stated under oath they stayed twenty minutes. Based on the testimony of these plaintiffs, the court finds the plaintiffs were required to stay twenty minutes after the close of each shift in addition to the regular eight-hour shift work and the twenty minute pre-shift roll call.

All the named plaintiffs consistently testified they were required to periodically attend mandatory off-duty meetings but the testimony of the plaintiffs varied as to the frequency and duration of the meetings. As a captain, Captain Alexander recalled two or three meetings per month that lasted one to three hours. Lt. Howard attended approximately one meeting per month which generally lasted two hours. Sgt. Doss remembered one to three meetings per month. Sgt. Rushing recalled attending monthly area meetings approximately two hours in length and five to six administrative meetings in 1993. He recalled monthly meetings in 1994 and 1995, two hours long. From the evidence adduced at trial, the court is unable to determine the exact amount of overtime attributable to the mandatory off-duty meetings. The court can only conclude that attendance was required and will save the determination of the amount of time for the damage phase of the trial.

All the named plaintiffs became supervisory correctional officers after those positions had been reclassified as exempt in light of *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Prior to becoming supervisory correctional officers, the plaintiffs were correctional officers. Since 1986, when the union was formed, non-supervisory correctional officers have received overtime compensation for all hours worked in excess

of forty hours per workweek.[3] When Lt. Swanson first bid on a supervisory position, she knew that supervisors' pay was quoted as a monthly amount not an hourly amount. She also knew she would be required to report early and stay late, and she knew supervisors were not paid overtime. When Lt. Howard competed to become a lieutenant, he knew he was required to work more than 8 hours each day and that the job posting quoted a salary, not an hourly rate. None of the plaintiffs were ever told they were hourly employees. To the contrary, at least one plaintiff, Sgt. Rushing acknowledged he was advised he was an exempt employee.

Despite this knowledge, plaintiffs accepted supervisory positions and continued to accept their paycheck without overtime with minimal complaints. Captain Alexander testified he complained to three different people: Mr. Wilson, Deputy Director; Janet Bates in Personnel; and Pat Russell. These complaints appear to be made in the early 1990's. Lt. Howard vaguely recalled protesting the lack of overtime but could not recall when the complaint was made. Sgt. Doss made approximately three complaints in the early 1990's.

Prior to 1987, the county had an informal policy of "comp time." An employee could elect to receive time off in lieu of overtime pay. During the transition from hourly to exempt to comply with the FLSA, the "comp time" on the books was liquidated. Employees were given lump sums for accumulated comp time and told comp time would no longer be available. Nevertheless, employees unofficially continued to record comp time until May, 1995.

Each plaintiff took sick leave and vacation each year. The actual number of days taken by each plaintiff was not introduced into evidence in this phase of the trial.

Plaintiffs did not have regularly scheduled meal periods. They were not allowed to leave the worksite during meals. Each plaintiff remained on call during the meals. Each plaintiff was required to keep a radio on during meals and respond to calls such as "Code Blue" or "Code Red." Approximately once or twice a week and occasionally three times a week, plaintiffs actually sat down for fifteen to thirty minutes uninterrupted to eat a meal. Even defendants' witness, Robert Moore, a former supervisory correctional officer at SCCC, admitted he could not leave the compound during meals, that he had to keep his radio on, and that he was periodically interrupted to respond to calls.

All the plaintiffs, as supervisory correctional officers, are paid, and have been paid, a fixed amount of compensation, or base pay, semimonthly on the 15th and on the last working day of each month. The base pay amount is the same on every paycheck, regardless of the number of hours actually worked in a particular pay period. In addition to bearing the same fixed amount of compensation, each paycheck has a stated hourly rate of pay on the face of the paycheck. Each paycheck also shows the same number of hours worked for each pay period, 86.6 hours, regardless of the number of days in the pay period or the number of hours actually worked.

Ellen Schneider, the manager of personnel for Shelby County, explained that even though all exempt employees have a stated hourly rate, base pay, and a base pay period on their paychecks, it does not mean an employee is hourly. The purpose of the stated hourly rate is to calculate benefits, bonus pay, annual leave and holiday pay. Pat Russell, Manager of Human Resources, testified that annual leave is accrued in hours which are earned each month on the anniversary date of employment. As Ms. Russell stated, "Even the mayor's paycheck reflects a base salary and hourly rate." The county policy since January 1, 1987, has been to use a 40 hour workweek or 2080 hours per year for exempt employees to generate an hourly

3. In 1991, the threshold level was changed to 41 hours. The overtime provision of Article XV of the Memorandum of Understanding between the County and AFSCME, Local 1733, covering the Correctional Officer Unit effective December 31, 1991, and extended through June 30, 1996, provides that "overtime will be paid at one-and-one-half (1 and 1/2) times the regular hourly rate for all hours worked in excess of forty-one (41) hours in a work period." Effective November 25, 1996, the threshold was increased to 43 hours in a work period.

amount of salary for the purpose of calculating benefits. The only other workweek classification used by the county is a 37.5 hour workweek.

The Position Class Incumbent Report, (Exh. 17), introduced by the plaintiffs shows a salary, as opposed to an hourly wage, for each sergeant, lieutenant, and captain at the SCCC. Although the report bears the notation "40 hr" in its title, Mr. James Martin, Administrator of Personnel for the County, explained the notation is merely a computer designation which indicates how to calculate benefits for the salaried employees on the list.

## CONCLUSIONS OF LAW

### I. Overtime Calculation

 In order to determine the overtime compensation due plaintiffs, the court must first determine what the plaintiffs' regular rate of pay was. To determine the regular rate of pay, the court must determine what amount of time the plaintiffs' periodic pay was intended to compensate. Stated differently, the main issue before the court is whether the pay received by plaintiffs was intended to compensate plaintiffs for all hours worked, both the regular shift work and the additional mandatory hours worked before the beginning of the shift, at the end of the shift, and by attending meetings. If plaintiffs' salaries were intended to compensate for all hours, that is, regular shift hours plus overtime hours, then defendants would not owe plaintiff wages calculated in the amount of one and one-half times their regular rate of pay for the overtime hours, but defendants would instead owe plaintiffs an additional amount calculated at one-half plaintiffs' rate for each hour of overtime. In addition, to determining the amount of overtime compensation, the court must decide whether plaintiffs are entitled to compensation for meal breaks.

Overtime pay is defined as one and one-half times an employee's "regular rate." 29 U.S.C. § 207(a). The "regular rate" is the hourly rate actually paid an employee for his normal, non-overtime workweek for which he is employed. 29 U.S.C. § 207(e); *149 Madi-*

*son Avenue Corp. v. Asselta,* 331 U.S. 199, 204, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947); *Aaron v. City of Wichita, Kansas,* 54 F.3d 652, 655 (10th Cir.1995), *cert. denied,* 516 U.S. 965, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995). If an employee is employed on a salaried basis, his regular hourly rate is computed by dividing the salary by the number of hours for which the salary is intended to compensate. 29 C.F.R. § 778.113 (1993).

In *Aaron v. City of Wichita, Kansas,* 54 F.3d 652 (10th Cir.1995), *cert. denied,* 516 U.S. 965, 116 S.Ct. 419, 133 L.Ed.2d 336 (1995), the court was faced with determining the proper method for calculating overtime pay due firefighters. The firefighters argued that the determination of the appropriate "hourly rate" used to calculate overtime pay should be calculated by dividing their "salary" by 40 (hours) on the theory that overtime hours could not be used in calculating overtime pay. The Tenth Circuit flatly rejected this argument. The Tenth Circuit determined that the plaintiffs' designated salary was intended to cover all of the hours worked by plaintiffs during any given workweek, including both overtime and non-overtime hours.

Likewise, in *Zoltek v. Safelite Glass Corp.,* 884 F.Supp. 283 (N.D.Ill.1995), a very similar case to the one now before the court, the plaintiff, a salaried employee, filed an FLSA action, alleging that his employer did not pay him overtime wages to which he was entitled. The plaintiff and his employer conducted themselves for almost two and one-half years as if the plaintiff were properly classified as an exempt employee. The plaintiff worked more than 40 hours in many weeks, was never compensated for overtime but never protested the lack of overtime compensation. The plaintiff's hours varied from week to week, yet his paychecks remained the same. The plaintiff argued that he was entitled to one and one-half his "regular rate" of pay for all hours worked over 40 during the relevant time period and that his regular rate of pay should be computed by dividing his weekly salary by 40 hours. The employer argued, however, that the plaintiff had already been paid for all hours worked and was only entitled to an additional one-half the regular rate

for hours worked over 40 and that the plaintiff's regular rate of pay should be calculated by dividing his weekly salary by the total number of hours worked in a week.

In support of his argument that his salary was intended to compensate him for only forty hours per week, Zoltec relied upon payroll records. These payroll records indicated a pay rate of $16.83 per hour; in addition, his pay check stubs contained a column indicating 86.67 hours per bi-monthly pay period. The *Zoltek* court rejected the plaintiff's argument, concluding that these references were merely accounting requirements for the payroll system.

Since the parties in *Zoltek* agreed that the plaintiff was to be paid on a salaried basis, with no additional payment for overtime hours, the court calculated his "regular rate" of pay by dividing his salary amount per week by the number of hours worked in each week. The plaintiff then was entitled to one-half the "regular rate" multiplied by the number of overtime hours worked in that week. The plaintiff was not entitled to time-and-a-half because he already was compensated at the regular rate for all hours worked. *Zoltek*, 884 F.Supp. at 287–288.

Plaintiffs here argue that their salaries were intended to compensate them only for 40 hours each week. Plaintiffs contend there are a number of factors which indicate that the wages they received were not intended to compensate for overtime but were merely intended to compensate for 40 hours per week of shift work. The plaintiffs relied on paychecks (Exh. 1), absentee reports (Exhs.2–10) and payroll reports (Exh. 17). For example, the Position Class Incumbent Report (Exh. 17) has the notation "40 HR" above the plaintiffs' monthly salary, and plaintiffs' paycheck stubs have an hourly rate (Exh. 1).

■ As in *Zoltek*, this documentary evidence is not controlling. *See Haynes v. Tru-Green Corp.*, 154 Ill.App.3d 967, 107 Ill.Dec. 792, 507 N.E.2d 945, 950 (1987) ("Employment records are not controlling on the issue of regular rate of pay; it is the actual fact of payment which controls." *Id.* ); *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 886 (10th

Cir.1967), *cert. denied*, 389 U.S. 959, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967).

Here, the evidence adduced during trial conclusively demonstrates that plaintiffs were compensated at a "salary" rate designed to compensate them for all hours worked, including the 8–hour shift work, pre and post-shift work, and attendance at mandatory off-duty meetings. The undisputed facts reveal that for a number of years the parties conducted themselves as if plaintiffs were properly classified as exempt from the overtime requirements of the FLSA. Plaintiffs worked more than 40 hours in some weeks and were never compensated for overtime. Plaintiffs' hours each week varied, yet their paychecks were generally the same each pay period. The plaintiffs' paychecks demonstrate that plaintiffs' salaries did not vary according to the number of hours worked each week. Further, the defendants have satisfied the court that the 40 hour designation, the stated hourly rate and the base pay designation on paychecks and accounting records were merely accounting devices for calculation of benefits. Thus, the payroll records as a whole prove that plaintiffs' salaries were intended to compensate them for all hours worked in a workweek.

■ Moreover, when some of the plaintiffs accepted supervisory positions, they were aware that the supervisory positions were salaried and no overtime was paid. Despite this knowledge, they accepted the positions and for years, no meaningful protest was made. The only real protests occurred when the informal "comp time" policy was finally discontinued. Therefore, plaintiffs impliedly consented to payment at a fixed sum per week regardless of the number of hours worked each week. *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 62 S.Ct. 659, 86 L.Ed. 914 (1942); *Harrison v. City of Clarksville*, 732 F.Supp. 810 (M.D.Tenn.1990).

■ Plaintiffs argue that defendants' proposed method of determining compensation is in essence a "fluctuating workweek" formula within the meaning of 29 C.F.R. 778.114. Plaintiffs urge the court to find that the requirements for a fluctuating workweek calculation of overtime have not been met.

This is not a proper case for application of the fluctuating workweek provision. To constitute a fluctuating workweek, the first requirement is that there exist a clear and mutual understanding between employer and employee to apply the fluctuating workweek provision. 29 C.F.R. 778.114; *Haynes v. Tru–Green Corp.*, 154 Ill.App.3d 967, 107 Ill. Dec. 792, 507 N.E.2d 945, (1987). Plaintiffs are correct in their assertion that no such understanding exists.

This is a case in which the parties agreed that the plaintiffs' salaries would cover all hours worked. There was never any agreement between the parties, fluctuating workweek or otherwise, to pay overtime. Because of a technical violation of the FLSA, i.e., the disciplinary suspensions, defendants are now required to pay overtime and the court must merely determine the proper method of calculation of overtime not rewrite the employment agreement between the parties.

The record establishes without doubt that the plaintiffs have been paid a monthly salary and the monthly salary was meant to compensate for all hours worked. Accordingly, the appropriate calculation, as a matter of law, is to divide the number of hours worked by each plaintiff in any given workweek by his weekly salary amount in order to achieve the "regular rate."

Therefore, the amount of overtime compensation which plaintiffs are owed will be calculated as follows. Plaintiffs are entitled to overtime compensation for the time worked, including the required twenty minutes before and after the regular work shifts and required off-duty meetings, to the extent a forty-one hour workweek (the applicable overtime threshold) was exceeded for a given workweek. Plaintiffs, however, are not entitled to compensation for additional pre-shift time over twenty minutes merely because they may have arrived at work earlier than required.

Overtime damages for each plaintiff is then determined by multiplying all hours worked over forty-one hours in a given workweek by one-half of the employee's regular rate for that workweek, since each plaintiff has already been paid his "regular rate" for all hours worked during the workweek as part of his salary. 29 C.F.R. § 778.114; *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1324 (1st Cir.1992).

## II. Meal Periods

■ Bona fide meal periods ordinarily are not "worktime" under the FLSA. 29 C.F.R. § 785.19(a). To constitute a bona fide meal period, "[t]he employee must be completely relieved from duty for the purposes of eating regular meals. *Id.* Ordinarily, thirty minutes or more is long enough for a bona fide meal period ...." *Id.* An employee is not relieved of duty if he is required to perform any duties, whether active or inactive, while eating. *Id.*

In *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir.1990), the Eleventh Circuit held that exclusion of meal periods from hours worked was prohibited where firefighters were subject to respond to emergency calls during their meals. The firefighters were required to remain at their stations during meals and be ready to respond to emergency calls. Applying a "benefits" test, the Eleventh Circuit concluded that these restrictions on the firefighters' meals inured to the benefit of their employer and therefore, the firefighters were entitled to compensation for their meal periods. *Id.*, 915 F.2d at 1477.

The Sixth Circuit also follows a "predominant benefits" test:

> [a]s long as the employee can pursue his or her mealtime adequately and comfortably, is not engaged in the performance of any substantial duties, and does not spend time predominantly for the employer's benefit, the employee is relieved of duty and is not entitled to compensation under the FLSA.

*Hill v. United States*, 751 F.2d 810, 814 (6th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

In the present case, the plaintiffs were not allowed to leave the worksite during meal breaks, they were required to keep their radios on during meals, and they were required to respond to emergencies during

their meal breaks. These restrictions on plaintiffs' freedom during meals inured to benefit of the defendants and resulted in plaintiffs performing substantial duties for the defendants during meals. In addition, there were no regularly scheduled meal breaks. The court also notes that plaintiffs have been designated 40–hour exempt employees as opposed to 37.5 hour employees. If the defendants had intended to exclude compensation for plaintiffs' meal periods, they would have classified plaintiffs as 37.5–hour employees. Based on the evidence, the court finds there were no bona-fide meals within the meaning of the FLSA. *Burgess v. Catawba,* 805 F.Supp. 341, 347 (W.D.N.C. 1992). Accordingly, the time for plaintiffs' thirty-minute meal periods is not excluded from the computation of any overtime hours worked by plaintiffs.

*III. Liquidated Damages*

 The FLSA provides for liquidated damages in an amount equal to compensatory:

> An employer who violates the provisions of Section 206 or section 207 of this title *shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b)(emphasis added). Under this provision, the award of liquidated damages is mandatory. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 707–714, 65 S.Ct. 895, 89 L.Ed. 1296 (1945); *Lee v. Coahoma County, Miss.,* 937 F.2d 220, 226 (5th Cir.1991); *McClanahan v. Mathews,* 440 F.2d 320, 325 (6th Cir.1971). In 1947, Congress amended the FLSA by adding section 206 which gives the court the discretion to award no liquidated damages or award any amount of liquidated damages not to exceed the amount specified in § 216, if the employer establishes "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of [the FLSA]." 29 U.S.C. § 260. A finding in favor of defen-

dant of good faith and reasonableness does not preclude the award of liquidated damages. *Lee,* 937 F.2d at 227.

At the trial, defendants produced evidence that they read the regulations and relied on advice of counsel in establishing a disciplinary suspension policy for exempt employees. As a result, they believed their policy was in compliance with the FLSA. The policy as communicated to the employing units within the county in James Martin's October 1992 memo, which has been discussed at length in previous orders, and as applied in practice by the county, however, violated the FLSA, by its use of "five days" disciplinary suspensions resulting in fractional workweek suspensions instead of disciplinary suspensions of a full "workweek." Based on the evidence presented at trial, the court granted defendants' Rule 52(c) motion for partial findings, holding the defendants acted in good faith and their actions were reasonable. Thus, the award of liquidated damages is discretionary with the court.

Plaintiffs argue that because the defendants have withheld for several years the overtime pay due plaintiffs, an award of overtime compensation at this time will not make plaintiffs whole, and unless the court awards liquidated damages, defendants will be unjustly enriched. The court, however, does not find this to be an appropriate case for the award of liquidated damages and disallows liquidated damages.

 The Sixth Circuit has decreed that if liquidated damages are not awarded in a FLSA case, then prejudgment interest must be awarded. *McClanahan v. Mathews,* 440 F.2d 320, 324 (6th Cir.1971). Prejudgment interest is to be awarded as a substitute for liquidated damages. *Marshall v. Duncan,* 480 F.Supp. 62, 64 (E.D.Tenn.1979). Plaintiffs are therefore awarded prejudgment interest on their compensatory damages from the date of filing of the complaint through the date of entry of judgment at the rate set forth in the post-judgment interest statute, 28 U.S.C. § 1961, in effect at the time of the filing of the complaint, and postjudgment interest thereafter on both the compensatory damages and prejudgment interest at the

statutory rate, 28 U.S.C. § 1961, in effect at the time of entry of the judgment.

## IV. Attorney's Fees and Costs

 Awards of attorney's fees under the FLSA are governed by 29 U.S.C. § 216(b) which provides as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be ... The court in such actions *shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b)(emphasis added). The award of attorney's fees and costs to the prevailing party is mandatory under this section, but the amount of the award is within the discretion of the court. *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied,* 513 U.S. 875, 115 S.Ct. 203, 130 L.Ed.2d 134 (1994).

As the court has ruled in favor of plaintiffs on summary judgment on the issues of liability for overtime and after trial on the issue of compensability for meal breaks, an award of attorney's fees and costs to plaintiffs is mandated. After the conclusion of the damage phase of this lawsuit and upon application by plaintiffs supported by affidavit, a determination of the appropriate amount will be made.

## V. Conclusion

As the court has further found that defendants cannot avail themselves of the "window of correction" under *Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), (Order Denying Defendants' Renewed Motion for Reconsideration, Granting Defendants' Motion for Leave to File a Reply, and Clarifying Partial Summary Judgment Ruling in Light of *Auer v. Robbins,* April 23, 1997), defendants are liable to plaintiffs for overtime compensation on the following basis: For the period two years prior to the filing of the complaint, May 31, 1993, to the final date of the most recent discipline (June

7, 1995), plaintiffs are entitled to an additional one-half their regular weekly rate for all actual hours worked in excess of forty-one hours during a workweek, plus prejudgment interest from the date of filing of the complaint through the date of entry of judgment at the rate set forth in the post-judgment interest statute, 28 U.S.C. § 1961, in effect at the time of the filing of the complaint, and post-judgment interest thereafter on both the compensatory damages and prejudgment interest at the statutory rate, 28 U.S.C. § 1961, in effect at the time of entry of the judgment, plus attorney's fees and costs in an amount to be determined.

Having determined the liability issues, the court will hold a status conference on Thursday, August 14, 1997, at 9:30 a.m. to discuss scheduling the damage phase of the trial.

IT IS SO ORDERED.