# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Kerbes v. Raceway Associates, LLC*, 2011 IL App (1st) 110318

| | |
|---|---|
| Appellate Court Caption | EARL KERBES, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. RACEWAY ASSOCIATES, LLC, d/b/a Chicagoland Speedway, a Subsidiary of International Speedway Corporation, a Florida Corporation, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-11-0318 |
| Filed | November 21, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A class action by part-time hourly employees of a racetrack alleging that the change of the paid workweek from Tuesday through Monday to Saturday through Friday resulted in the denial of overtime pay was properly dismissed for failing to state a cause of action where there was no allegation that any class member would work over 40 hours in the new workweek, there was no allegation that proper compensation for overtime would not be paid if class members did work overtime, the new workweek complied with the Minimum Wage Law and the Wage Payment and Collection Act, as interpreted by the Fair Labor Standards Act, and the evils addressed by that Act were never implicated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-09662; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Touhy Touhy & Buehler, LLP, of Chicago (Terrence Buehler, of counsel), and John Downey, of John J. Downey, P.C., of Hinsdale, for appellant.

Loeb & Loeb LLP, of Chicago (Jeremy D. Margolis, Theresa L. Davis, and Michelle LaMar, of counsel), for appellee.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Justice Hall and Justice Karnezis concurred in the judgment and opinion.

## OPINION

¶ 1   Plaintiff, Earl Kerbes, individually, and on behalf of all others similarly situated, filed the instant class action lawsuit against defendant, Raceway Associates, LLC, d/b/a Chicagoland Speedway, a subsidiary of International Speedway Corporation, a Florida corporation (collectively, ISC). The suit arises out of ISC's decision to change the paid workweek of its part-time hourly employees from a schedule that ran from Tuesday through Monday to one running from Saturday through Friday. Plaintiff, alleging that the class of part-time workers he represented typically worked well over 40 total hours during racing events held from Thursday to Sunday, sought to recover overtime pay allegedly denied them due to the change in the workweek schedule. The circuit court dismissed plaintiff's claim for a failure to state a cause of action and plaintiff has now appealed. For the following reasons, we affirm.

¶ 2                     I. BACKGROUND

¶ 3   Plaintiff filed his initial complaint against ISC on March 10, 2010. In that complaint, plaintiff generally alleged that he had been a part-time security guard since 2002 at Chicagoland Speedway in Joliet, IL. Chicago Speedway hosted a number of motorsport events at its racetrack, with the races themselves typically held on a Sunday following a weekend of related activities that would begin the preceding Thursday. During such race weekends, as many as 800 part-time employees would be employed at the racetrack. Such employees were paid hourly and would frequently work between 60 and 80 total hours over the four-day weekend.

¶ 4   When plaintiff began working at Chicagoland Speedway in 2002, the scheduled workweek for hourly employees such as himself was Tuesday through Monday. Thus, when plaintiff and the other part-time employees worked more than 40 hours during a racing event weekend, they would earn substantial overtime pay. In June of 2007, however, International

Speedway Corporation acquired the Chicagoland Speedway and changed the workweek of its hourly employees to Saturday through Friday. This change effectively split any racing event weekend into two different workweeks. Furthermore, because racing events are rarely scheduled on consecutive weekends, plaintiff and the other part-time hourly employees no longer earned overtime pay for their work on racing event weekends.

¶ 5    Plaintiff's class action complaint sought to recover for unpaid overtime on behalf of himself and a class of similarly situated hourly employees of ISC. Specifically, plaintiff asserted that he and other similar ISC employees "regularly worked more than eight hours per day and forty hours per week during their employment," but that the change in the scheduled workweek eliminated any possibility of overtime pay for their work. This change allegedly violated provisions of the Illinois Minimum Wage Law (Minimum Wage Law) (820 ILCS 105/1 *et seq.* (West 2010)), the Illinois Wage Payment and Collection Act (Wage Payment Act) (820 ILCS 115/1 *et seq.* (West 2010)), and the Eight Hour Work Day Act (Eight-Hour Act) (820 ILCS 145/1 *et seq.* (West 2010)).

¶ 6    ISC filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), asserting that the complaint failed to state a claim under any of these three statutes or, indeed, any other relevant state or federal regulation. ISC contended that nothing in the Eight-Hour Act required it to pay overtime for hours worked in excess of eight hours per day, and nothing in the other two statutes cited by plaintiff precluded its decision to change the workweek in such a way that its part-time employees would no longer accumulate significant overtime hours on race weekends.

¶ 7    Plaintiff voluntarily dismissed the claim brought pursuant to the Eight-Hour Act, and the trial court subsequently dismissed the complaint without prejudice following a hearing on August 24, 2010.[1] In its written order, the trial court indicated that plaintiff was given leave to file an amended complaint "to assert a claim for overtime earned but unpaid as of the change in the definition of the work week[, *i.e.*, for overtime earned in the transitional week]. Plaintiff's original claim may be repled for purposes of preserving it for appeal."

¶ 8    Plaintiff subsequently filed an amended complaint which included both his original claim as well as a new claim that ISC also owed him and other similar employees for overtime earned during the week when ISC made the transition to the new workweek schedule. The complaint also included additional factual allegations in support of both claims. Notably, in the amended complaint plaintiff now alleged that the workweek change occurred in June of 2008. A scheduling order entered by the trial court on October 26, 2010, indicates that ISC filed a motion to dismiss the amended complaint, but neither that motion nor any response

---

[1]While plaintiff has attached a transcript of this hearing to his brief on appeal, the transcript was not actually included in the record and it is well recognized that the record "cannot be supplemented by attaching documents to the appendix of a brief." *Whittmanhart, Inc. v. CA, Inc.*, 402 Ill. App. 3d 848, 852 (2010). As such, we will not further address the contents of that transcript here.

thereto appears in the record on appeal. Instead, the record includes only an order entered on December 21, 2010, a scheduled status date, dismissing the amended complaint with prejudice. Plaintiff timely appealed.

¶ 9                                                    II. ANALYSIS

¶ 10      On appeal, plaintiff abandons any claim regarding unpaid overtime earned during the transitional week. Thus, he only challenges the trial court's dismissal of his claim that ISC's change to its employees' workweek was improper and denied him and other similar employees overtime and thus violated provisions of the Minimum Wage Law and the Wage Payment Act. We find that this claim was properly dismissed.

¶ 11                                              A. Standard of Review

¶ 12      A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint. *R&B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 920 (2005). "The proper inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). A trial court's decision to grant a motion to dismiss pursuant to section 2-615 is reviewed *de novo*. *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 815 (2003).

¶ 13                                             B. Preliminary Issues

¶ 14      We first address two preliminary issues. First, while both the plaintiff's original complaint and his amended complaint contain the original claim regarding ISC's change to its workweek schedule–and it is the dismissal of that claim that plaintiff challenges on appeal–the amended complaint contains additional factual allegations in support of both that claim and plaintiff's additional claim regarding the payment of overtime in the transitional week. Indeed, the amended complaint asserts that the workweek schedule change actually occurred in June of 2008 instead of June of 2007. However, the trial court's order dismissing the original complaint only granted plaintiff leave to add an additional claim regarding the transitional week and to replead the original claim "for purposes of preserving it for appeal." The trial court did not grant plaintiff leave to amend the factual foundation supporting the initial claim. Typically, "[i]n order to file an amended complaint, the plaintiff must seek and obtain the court's permission." *Moyer v. Southern Illinois Hospital Service Corp.*, 327 Ill. App. 3d 889, 895 (2002).

¶ 15      Moreover, ISC indicates in its brief on appeal that plaintiff did not respond to its motion to dismiss the amended complaint in the trial court. ISC contends plaintiff instead filed a motion to voluntarily dismiss the amended complaint with prejudice and it was this motion that was granted on December 21, 2010. There is nothing in the record to support or refute this rendition of events, other than the order entered by the trial court on October 26, 2010, indicating that ISC filed a motion to dismiss the amended complaint and scheduling briefing

on that motion, and the December 21, 2010, order which dismissed plaintiff's amended complaint without reference to ISC's motion and without providing any specific basis for the dismissal.

¶ 16    However, we do note that: (1) plaintiff did not file a reply brief in this court challenging ISC's assertions; and (2) in his opening brief on appeal plaintiff appears to reference the factual allegations contained in the original complaint when he refers to June of 2007 as being the time frame in which ISC changed its employees' workweek. On this record, it thus appears that the operative allegations at issue in this appeal are those contained in plaintiff's original complaint. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (an appellant has the burden to present a sufficiently complete record of the proceedings at trial, and any doubts that may arise from the incompleteness of the record will be resolved against the appellant). As such, and although the differences between the allegations contained in the two complaints do not materially affect our analysis, we will consider plaintiff's appeal to challenge the dismissal of his claim as presented in the original complaint below.

¶ 17    Second, we note that both parties on appeal variously refer to provisions of the Minimum Wage Law and the Wage Payment Act in ways that are inconsistent or incorrect. Specifically, while plaintiff indicates that his claim is based upon an overtime provision contained in section 4a of the Minimum Wage Law (820 ILCS 105/4a (West 2010)), he also repeatedly cites to provisions of the Wage Payment Act and case law interpreting that act. For example, he cites to a provision in the Wage Payment Act for the definition of "wages" despite the fact that the Minimum Wage Law has its own definition for that term. See 820 ILCS 105/3(b) (West 2010) (Minimum Wage Law definition); 820 ILCS 115/2 (West 2010) (Wage Payment Act definition). In turn, ISC incorrectly refers to section 4a of the Minimum Wage Law as a provision actually contained within the Wage Payment Act.

¶ 18    Here, plaintiff's complaint generally alleges violations of, and seeks recovery pursuant to, both the Minimum Wage Law and the Wage Payment Act. Both of these acts provide employees with wage protections and also provide that an employee has a private right of action to collect wages due from an employer. See 820 ILCS 105/12(a) (West 2010); 820 ILCS 115/11 (West 2010). Only section 4a of the Minimum Wage Law specifically concerns overtime payments, however, and it is clear that plaintiff's claim for overtime is fundamentally premised upon this section of the Minimum Wage Law. Thus, we limit our discussion to the relevant provisions of the Minimum Wage Law.

¶ 19                    C. Statutory Framework, Regulations, and Case Law

¶ 20    The Minimum Wage Law contains a "Legislative Policy" provision which provides, in part, that: "it is the policy of this Act to establish a minimum wage standard for workers at a level consistent with their health, efficiency and general well-being; to safeguard such minimum wage against the unfair competition of wage and hour standards which do not provide such adequate standards of living; and to sustain purchasing power and increase employment opportunities." 820 ILCS 105/2 (West 2010). As such, the Minimum Wage Law further provides that it is "against public policy for an employer to pay to his employees an amount less than that fixed by this Act." *Id.*

¶ 21 Of particular relevance here, section 4a of the Minimum Wage Law concerns overtime payments and mandates that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4a(1) (West 2010).[2] Section 12 of the Minimum Wage Law provides employees with a right to bring a civil action to pursue any underpayment of wages due under the law (820 ILCS 105/12(a) (West 2010)), while section 10 grants the Director of the Illinois Department of Labor the power "to make and revise administrative regulations, including definitions of terms, as he deems appropriate to carry out the purposes of this Act, to prevent the circumvention or evasion thereof, and to safeguard the minimum wage established by the Act" (820 ILCS 105/10(a) (West 2010)).

¶ 22 Pursuant to the authority granted by section 10(a), a number of administrative regulations implementing the Minimum Wage Law have been adopted. These include a regulation providing:

> "a) An employee's workweek is a fixed and regularly recurring period of 168 hours–seven consecutive 24-hour periods. It need not coincide with the calendar week, but it may begin on any calendar day and at any hour of the day.

> b) Once the beginning time of a workweek is established, it remains fixed regardless of the schedule of hours worked by the employee. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of this Act.

> c) In the event an employer fails to establish a fixed and regular work week, the Director shall consider a calendar week as the applicable work week. 'Calendar week' means that seven consecutive day period beginning at 12:01 a.m. Sunday morning and ending on the following Saturday night at midnight." 56 Ill. Adm. Code 210.400 (2010).

¶ 23 Even a cursory review of this regulation is enough to establish a number of points about the workweek established by ISC. Specifically, the workweek under which plaintiff and other similar ISC employees were paid did not have to coincide with the calender week, so long as it consisted of "seven consecutive 24-hour periods." Furthermore, the workweek for purposes of payment need not coincide with the schedule of hours actually worked by any employee. We note that such administrative rules have "the force and effect of law" and are therefore entitled to weight and deference so long as they are not inconsistent with the statute pursuant to which they are adopted. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 367-68 (2009). Finding nothing about this regulation to be inconsistent with section 4a of the Minimum Wage Law, and despite the fact that plaintiff's complaint alleges that part-time hourly employees such as himself actually worked most if not all of their hours for ISC from

---

[2]The Minimum Wage Law specifically exempts certain classes of employees from this overtime requirement. See 820 ILCS 105/4a(2) (West 2010). There is no indication that any of these exemptions apply in this case, and neither plaintiff nor ISC claims that these exemptions apply in this case.

Thursday to Sunday, we must therefore find that there is nothing inherently improper about either the original Tuesday through Monday workweek or the new workweek running from Saturday through Friday.

¶ 24    Nevertheless, plaintiff maintains that he has stated a claim by alleging the actual change to the beginning of the scheduled workweek was improper because it was made to "avoid paying overtime." Plaintiff contends that this modification therefore violated the portion of the regulation requiring that any change be permanent and not be "designed to evade the overtime requirements of this Act." 56 Ill. Adm. Code 210.400(b) (2010). We disagree with this contention.

¶ 25    We first note that there are no additional Illinois Administrative Code regulations that provide further explanation of what type of workweek changes would be "designed to evade the overtime requirements of this Act," nor are we aware of any Illinois case law interpreting this language. However, the Illinois Administrative Code (56 Ill. Adm. Code 210.120 (2010)) does provide that–in interpreting the Minimum Wage Law–the Director of the Department of Labor may refer to regulations and interpretations of the federal Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. § 201 *et seq.* (2008)). Furthermore, other courts have recognized that in light of their substantial similarities, provisions of the FLSA and interpretations of that legislation can be considered in applying the Minimum Wage Law. *Turner v. The Saloon, Ltd.*, 491 F. Supp. 2d 767, 770 (N.D. Ill. 2007) (citing *Haynes v. Tru-Green Corp.*, 154 Ill. App. 3d 967, 977 (1987)). In light of the paucity of authority directly considering section 4a of the Minimum Wage Law and its implementing regulations, we will similarly consider the FLSA, its implementing regulations, and relevant interpretive case law.

¶ 26    Just as in section 4a of the Minimum Wage Law, section 207(a)(1) of the FLSA provides that covered employees that work more than 40 hours in a workweek must be compensated for those excess hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1) (2008).[3] In turn, provisions of the Code of Federal Regulations (CFR) implementing this provision mirror the language contained in the Illinois Administrative Code by similarly allowing employers to establish workweeks that may begin or end on any day of the week, at any time of the day, and without regard to the employee's actual work schedule. Compare 56 Ill. Adm. Code 210.400 (2010), with 29 C.F.R. § 778.105 (2011). Nevertheless, the CFR also provides that the beginning of an employee's workweek may be changed "if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act." 29 C.F.R. § 778.105 (2011). However, while the Illinois Administrative Code does not itself provide further clarification of the type of practices that would improperly "evade the overtime requirements" of the Minimum Wage Law, the CFR does provide two specific examples of improper devices under the FLSA.

¶ 27    First, federal regulations provide that "the overtime provisions of the act cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and

---

[3]Again, there are exemptions to the federal overtime requirement as well, but they are not relevant to this case.

-7-

making up the additional compensation due to employees by other means. *** Payment for overtime on the basis of an artificial 'regular' rate will not result in compliance with the overtime provisions of the Act." 29 C.F.R. § 778.500(a) (2011). Second, the CFR prohibits a "split-day" plan whereby "the normal or regular workday is artificially divided into two portions one of which is arbitrarily labeled the 'straight time' portion of the day and the other the 'overtime' portion. Under such a plan, an employee who would ordinarily command an hourly rate of pay well in excess of the minimum for his work is assigned a low hourly rate (often the minimum) for the first hour (or the first 2 or 4 hours) of each day." 29 C.F.R. § 778.501(a) (2011). Neither of these two examples is particularly relevant to plaintiff's instant claim against ISC, and neither lends any support to his assertion of a FLSA or Minimum Wage Law violation on the basis that ISC made a permanent change in the starting date of its employees' workweek only to avoid paying its employees overtime.

¶ 28    Turning to the case law interpreting the overtime requirements of the FLSA, we find that plaintiff's assertions have been generally rejected by the courts. For example, in *International Ass'n of Firefighters, Local 349 v. City of Rome, Georgia*, 682 F. Supp. 522 (N.D. Ga. 1988), the court addressed a change in the work schedule of a group of municipal firefighters. The firefighters challenged this change, asserting that it was nothing but "a subterfuge, an artificial device designed to avoid illegally the overtime provisions of the FLSA." *Id.* at 527. The court noted that the municipality admitted that the only reason for the change was to take advantage of certain provisions of the FLSA applicable to such firefighters "so as to avoid overtime payments." *Id.* at 528. The court found, however, that "[t]his motive, in itself, is not improper." *Id.* Another federal court addressed a similar challenge to a work schedule change brought by municipal police officers in *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145 (10th Cir. 1992). Citing to the *City of Rome* decision, the federal court found that even if the municipality's "sole purpose were to avoid the prospect of paying overtime rates ***, Plaintiffs do not demonstrate in what way that aim would be improper." *Id.* at 1153.

¶ 29    Aside from the issue of an employer's motive, courts have also historically found no FLSA violation where an employee's actual schedule of work is split over two separate employer-defined workweeks. Thus, in *Harned v. Atlas Powder Co.*, 192 S.W.2d 378, 379 (Ky. 1946), the court addressed a situation where employees were on a rotating schedule of seven consecutive days of work, but those days never fell completely within the employer's established "workweek." The court rejected a claim that the establishment of a workweek that did not comport with the schedule of days an employee actually worked violated the FLSA. Specifically, the court found that "[b]efore appellant is entitled to overtime he must labor 40 hours during the workweek established by the Company. The staggering of the three shifts by the Company so that appellant never started work on any shift on Wednesday, the first day of the workweek, does not deny him overtime, although it may prevent him from receiving the maximum overtime to which he would be entitled if we accept his contention that a workweek is any and every consecutive seven days that he labors." *Id.* at 380-81.

¶ 30    Similarly, in *Barclay v. Magnolia Petroleum Co.*, 203 S.W.2d 626, 627-28 (Tex. Civ. App. 1947), the court addressed a claim that the "spirit" of the FLSA and other employment statutes was violated where an employer split the 80 hours an employee worked over seven

consecutive days into two separate workweeks and thus avoided paying any overtime. The court disagreed, finding that the "right of the employer to establish a 'work week' seems to be well settled. If the purpose and intent of [the FLSA and other statutes] was to prohibit the employer from working the employee seven consecutive days without paying the premium pay, it would have been a simple matter to have included such an express provision in the wording of the statutes. Such a provision is not included therein." *Id.* at 628.

¶ 31 We find that this authority supports the conclusion that ISC's modification of its workweek did not violate the overtime requirements of the FLSA. The change was permanent, having been made once and there being no allegation it was ever modified again. Furthermore, as the above authority instructs–and contrary to plaintiff's assertions here–the FLSA does not require a workweek schedule that maximizes an employee's accumulation of overtime pay. Thus, a schedule whereby an employee's actual work schedule is split between two workweeks does not violate the federal legislation. If such a schedule does not itself violate the FLSA, we fail to see how a change to such a schedule could be viewed as having been "designed to evade the overtime requirements of this Act."

¶ 32 Indeed, it is evident from the language of the FLSA, and its implementing regulations, that the federal legislation bars an employer from modifying its workweek schedule in order to deny employees overtime wages that they are *actually owed* pursuant to the legislation's requirements, not changes that in some way limit an employee's ability to *earn* such overtime payments in the future. Here, while the new schedule may limit the amount of future overtime payments to ISC employees, there is no allegation that plaintiff or any of the other purported class members would not be paid overtime should they actually ever labor more than 40 hours in a given workweek under the new schedule. Again, this is not a violation of the FLSA. Moreover, in light of our general practice of interpreting our state's labor law in conformity with the FLSA, we also find that there was no violation of the overtime requirements contained in section 4a(1) of the Minimum Wage Law.

¶ 33                                   D. Dissenting Authority

¶ 34 Despite this clear authority, our research has revealed a number of decisions that appear to support the notion that an employer violates the FLSA when it alters its workweek in such a way to reduce overtime payments without a separate and legitimate business purpose, and that the desire to avoid overtime payments is not on its own a sufficiently legitimate aim. See *Abshire v. Redland Energy Services, LLC*, No. 10-2170, 2011 WL 4633093, at *2 (W.D. Ark. Oct. 6, 2011) (collecting cases). The majority of these decisions are unreported federal district court orders, however, and such orders are not binding or precedential before Illinois courts. *County of Du Page v. Lake Street Spa, Inc.*, 395 Ill. App. 3d 110, 122 (2009). Indeed, even reported federal circuit and district decisions are only persuasive authority in Illinois state courts. *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005). In light of the contrary authority cited above, which notably includes the *reported* decisions of a federal district court in *City of Rome* and a federal circuit court in *Lamon*, we therefore decline to follow the reasoning espoused in these unreported federal decisions with respect to their interpretation of the FLSA. More to the point, we simply disagree with the notion

that an employer's decision to make a permanent change from a workweek schedule that fully complies with the FLSA–but allows employees to earn significant overtime–to another schedule that also fully complies with the FLSA–but nevertheless results in the employees earning less overtime–constitutes a change "designed to evade the overtime requirements" of the FLSA.

¶ 35    We are also unpersuaded by the decision of a California state court in *Seymore v. Metson Marine, Inc.*, 128 Cal. Rptr. 2d 13 (Cal. Ct. App. 2011). In that case, the court was asked to interpret provisions of California state labor laws. *Id.* at 15. Just as in Illinois, California courts refer to the FLSA for guidance in interpreting its own state labor laws. *Id.* at 17-26. After consideration of a number of cases interpreting the FLSA, the court in *Seymore* found that an employer's practice of defining a workweek that differed from the actual work schedule its employees actually worked was nothing more than an attempt to evade the requirements of the California labor law. *Id.* at 20. The court relied in part on the fact that "[n]othing in the record suggests that the designation of the workweek was designed to serve a legitimate business purpose or any purpose other than the avoidance of the obligation to pay overtime wages." *Id.*

¶ 36    We reject the *Seymore* decision for a number of reasons. First, we note that the reasoning of the court in *Seymore* was guided in large part by its consideration and acceptance of the reasoning contained in many of the very same unreported federal district court interpretations of the FLSA referred to and rejected above. *Id.* at 20-21. Second, the California regulations at issue in *Seymore* were substantively different from the FLSA. While both the California regulation and the FLSA regulations define a workweek as "seven consecutive 24-hour periods," the Minimum Wage Law and FLSA regulations further provide that a workweek "need not coincide with the calendar week but may begin on any day and at any hour of the day" and may be fixed "regardless of the schedule of hours worked" by an employee. Compare Cal. Labor Code § 500(b) (West 2010), with 56 Ill. Adm. Code 210.400 (2010), and 29 C.F.R. § 778.105 (2011). As the *Seymore* court specifically noted, its state labor laws "may provide greater protection than the FLSA." *Seymore*, 128 Cal. Rptr. 2d at 17. In contrast, the Minimum Wage Law and its implementing regulations are generally interpreted in dovetail with the FLSA. *Turner*, 491 F. Supp. 2d at 770; *Haynes v. Tru-Green Corp.*, 154 Ill. App. 3d at 977.


¶ 37                                  E. Policy Argument

¶ 38    Finally, we also reject plaintiff's contention that allowing ISC to modify its workweek would violate the policy and purposes underlying the FLSA, and by extension, the Minimum Wage Law. First, we are not certain that the espoused purposes underlying the FLSA are particularly relevant to our interpretation of the Minimum Wage Law in light of the fact that our legislature has specifically provided its own statement of the policy underlying the state statute. 820 ILCS 105/2 (West 2010). Nevertheless, because we have consistently interpreted the state and federal laws together we will entertain this argument. The purposes underlying the overtime requirements of the FLSA have been described as follows:

    "The first purpose was to prevent workers willing (maybe out of desperation, though this

-10-

is no longer very likely) to work abnormally long hours from taking jobs away from workers who prefer to work shorter hours. In particular, unions' efforts to negotiate for overtime provisions in collective bargaining agreements would be undermined if competing, non-union firms were free to hire workers willing to work long hours without overtime. The second purpose was to spread work and thereby reduce unemployment, by requiring an employer to pay a penalty for using fewer workers to do the same amount of work as would be necessary if each worker worked a shorter week. The third purpose was to protect the overtime workers from themselves: long hours of work might impair their health or lead to more accidents (which might endanger other workers as well). This purpose may seem inconsistent with allowing overtime work if the employer pays time and a half, but maybe the required premium for overtime pay is intended to assure that workers will at least be compensated for the increased danger of working when tired." *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987).

¶ 39 We find no violation of these purposes alleged in plaintiff's complaint. As discussed above, the FLSA overtime rules apply only where an employee works over 40 hours in any single workweek. There is no assertion that plaintiff or any other purported class member will *ever* work over 40 hours in the newly established workweek here, nor are there any allegations that any employee will not receive proper compensation if they *did* work overtime under the new schedule. Thus, the new workweek complies with the FLSA, the evils that the federal legislation attempts to guard against are never implicated, and we therefore find that plaintiff's complaint was properly dismissed.

¶ 40 III. CONCLUSION

¶ 41 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 42 Affirmed.