In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-8029

GLENN DRIVER *et al.*, on behalf of themselves and all
 others similarly situated,

*Plaintiffs-Respondents*,

*v.*

APPLEILLINOIS, LLC, *et al.*,

*Defendants*.

PETITION OF W. CURTIS SMITH.

Petition for Permission to Appeal from the
United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 6149 — **Geraldine Soat Brown**, *Magistrate Judge*.

SUBMITTED DECEMBER 16, 2013 — DECIDED JANUARY 15, 2014

Before WOOD, *Chief Judge*, and BAUER and POSNER, *Circuit
Judges*.

POSNER, *Circuit Judge*. This is the second petition by the
remaining defendant in a class action suit for permission to

appeal from the denial by the magistrate judge presiding over the case of his challenge to the certification of the class. Fed. R. Civ. P. 23(f). We denied the first petition, and we are denying this second one as well, but we think it may be helpful to future litigants contemplating Rule 23(f) appeals to spell out our reasons for this second denial.

The rule authorizes a court of appeals to entertain interlocutory appeals from orders granting or denying class certification. It does not forbid a party to file repeated motions seeking our permission to appeal if, as is not uncommon, the district judge alters the class definition from time to time and therefore issues a new certification order each time. To avoid being inundated we need a standard for coping with repeat motions.

The class that the district court has certified is composed of waiters, bartenders, and other tipped employees at restaurants owned by entities controlled by defendant Smith (the other individual defendants have dropped by the wayside: two have died, the others have settled), who is subject to both the federal Fair Labor Standards Act and the Illinois Minimum Wage Law, 29 U.S.C. § 203(d); 820 ILCS 105/3(c), if determined to be an employer under those Acts (an issue not yet determined). Because they receive tips their employer is not required to pay them the full federal or state minimum wage; in effect their tips are credited against the minimum wage to which they would otherwise be entitled. 29 U.S.C. § 203(m); 820 ILCS 105/4(c). But of course if the tipped employees also perform non-tipped duties (provided those duties are unrelated to their tipped duties—an important qualification, as we'll see), such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or

cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work. Although only the state-law claims have been certified for class treatment, neither the Illinois statute nor the implementing regulation, 56 Ill. Admin. Code § 210.720, addresses the issue presented by this appeal. But that is of no consequence, because in such situations Illinois courts (and likewise, therefore, federal courts administering Illinois law) seek guidance in the federal case law interpreting the Fair Labor Standards Act. See 56 Ill. Admin. Code § 210.120; *Kerbes v. Raceway Associates, LLC*, 961 N.E.2d 865, 870–71 (Ill. App. 2011); *Urnikis-Negro v. American Family Property Services*, 616 F.3d 665, 672 n. 3 (7th Cir. 2010).

In her first ruling on class certification, the judge certified a class consisting of employees "who worked as tipped employees earning a sub-minimum, tip credit wage rate, and who performed duties unrelated to their tipped occupation for which they are not paid at the minimum wage rate." A second ruling modified the definition, and the last—the one that precipitated the current petition (filed more than three years after Smith's first petition) for permission to appeal—substituted a much simpler definition: employees "who worked as tipped employees earning a sub-minimum, tip credit wage rate."

The definition is overinclusive because it says nothing about the tipped employees' work for which they weren't tipped. True, the judge found that the defendant had a policy of requiring tipped employees to do non-tipped work yet without paying them the full minimum wage for the time they spent doing that work. But the Department of Labor, interpreting section 203(m), has distinguished between non-

tipped work that is, and is not, "related" to tipped work, and has decided that as long as the tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work (such as a waiter's setting or clearing a table that he waits on), the employer doesn't have to pay the full minimum wage (that is, the minimum wage without the tip credit) for the time the employee spends doing that work. 29 C.F.R. § 531.56(e); U.S. Department of Labor, *Field Operations Handbook* § 30d00(e) (June 30, 2000), www.dol.gov/whd/FOH/FOH_Ch30.pdf (visited Jan. 7, 2014); see *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011). Although in an earlier order the judge found that "many" of the defendant's employees spent more than 20 percent of their workday doing work related to tipped work, she didn't find that all did, or that all who didn't did at least some non-tipped work unrelated to tipped work and would therefore be entitled to full minimum wage for that work.

In nevertheless including all the tipped employees in the class, the judge relied on *Bolden v. Walsh Construction Co.*, 688 F.3d 893, 895 (7th Cir. 2012), which disapproved a class that "defines its members as persons who did not earn more 'because of their race.' Using a future decision on the merits to specify the scope of the class makes it impossible to determine who is in the class until the case ends, and it creates the prospect that, if the employer should prevail on the merits, this would deprive the judgment of preclusive effect: any other former worker could file a new suit, given that the losing 'class' lacked any members." To cure this problem, the opinion in *Bolden* suggested "changing the language from 'who were denied opportunities to work, not afforded overtime hours or not afforded premium pay hours, because of

their race' to something like 'who sought but were denied opportunities to work, overtime hours, or premium pay hours.' Then the litigation could determine whether those events occurred because of race." *Id*.

Our suggested definition in *Bolden* covered a class of workers who had suffered harm (denied opportunities of work, etc.), however, whereas to define a class as all "tipped employees earning a sub-minimum, tip credit wage rate" does not define a class of persons harmed. A tipped employee is entitled just to the sub-minimum, tip credit wage rate unless he is doing either unrelated non-tipped work or related non-tipped work in excess of 20 percent of his workday. When there is no allegation of a harm that a suit might redress, there is no claim over which a federal court can exercise jurisdiction.

A recognized ground for granting a Rule 23(f) petition is that deciding the appeal would clarify class action law, see *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 835 (7th Cir. 1999), and that ground could have been made the basis of the defendant's petition. But it was not. He is not challenging the district court's class definition. He thinks that the fact that the court changed the definition since our denial of his previous petition opens the door for him to renew his challenge to the *initial* grant of class certification on grounds derived from developments in the litigation since that grant, including subsequent rulings by the district court. That can't be right. In the course of a class action suit the presiding judge is quite likely to alter the class definition. There is no reason why such an alteration should open the door to an interlocutory appeal unrelated to the alteration.

And so we and the Tenth Circuit have held, and other courts of appeals have implied, that to justify a second appeal from an order granting or denying class certification the order appealed from must have "materially alter[ed] a previous order granting or denying class certification." *Matz v. Household International Tax Reduction Investment Plan*, 687 F.3d 824, 826 (7th Cir. 2012); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1191 (10th Cir. 2006); cf. *In re DC Water & Sewer Authority*, 561 F.3d 494, 496 (D.C. Cir. 2009); *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 193 (3d Cir. 2008); *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291–92 (11th Cir. 2007). The reason for requiring a material alteration is both practical and interpretive. Without such a requirement parties could file Rule 23(f) petitions whenever there was the slightest change in the class definition, resulting in the entry of a modified class certification order. And since Rule 23(f) authorizes interlocutory appeals only of orders "granting or denying class-action certification," an order that alters the class certification immaterially can't readily be thought a grant or a denial of certification, while an order that alters the certification materially is to that extent a grant or denial of certification. In *Matz* the order was a partial decertification that reduced the size of the class by between 57 and 71 percent. 687 F.3d at 825. We noted the arbitrariness of denying permission to allow an appeal just because the order was not formally a grant or denial of certification, when if the judge had defined the class as narrowly in his original certification order that order would have unequivocally been within the scope of Rule 23(f). See *id.* at 826.

There was a material alteration in the present case as well—the change in the class definition. But as we said that's not what the defendant wants to challenge. He's concerned

with several orders issued by the district court since his first Rule 23(f) petition was filed and denied more than three years ago, such as an order allowing the plaintiffs to use "representative evidence"—in effect, allowing damages to be extrapolated from a sample of the class members, rather than requiring that they be calculated for all 15,000 of them individually. The words "granting" and "denying" class certification can be stretched only so far. They can't embrace every order the judge issues that a party doesn't like. The interim orders in this case may for all we know have undermined the reasons for certifying a class in the first place, and the defendant can always move the magistrate judge to decertify the class on the basis of new developments, as indeed he did; the judge's denial of that motion was the precipitant of the defendant's petition for permission to appeal. *Driver v. AppleIllinois, LLC*, 2013 WL 5818899, at *12–13 (N.D. Ill. Oct. 29, 2013). Should the judge continue to refuse, her refusals won't be appealable under Rule 23(f). A refusal to decertify a class is neither an order granting nor an order denying certification; it is merely a denial of reconsideration of a previous ruling. *Gary v. Sheahan*, 188 F.3d 891, 892 (7th Cir. 1999); *In re DC Water & Sewer Authority*, *supra*, 561 F.3d at 496–97.

The petition for permission to appeal is therefore

DENIED.