In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-1028

LISA JOHNSON and GALE MILLER ANDERSON,

*Plaintiffs- Appellants,*

*v.*

AMAZON.COM SERVICES LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-CV-00685 — **Thomas M. Durkin**, *Judge.*

ARGUED SEPTEMBER 25, 2024 — DECIDED JULY 8, 2025

Before SCUDDER, KIRSCH, and MALDONADO, *Circuit Judges*.

MALDONADO, *Circuit Judge*. Lisa Johnson and Gale Miller Anderson allege that Amazon violated federal and Illinois wage laws by failing to pay them and other warehouse employees for time spent in mandatory pre-shift COVID-19 screenings. The district court dismissed their Fair Labor Standards Act (FLSA) and Illinois Minimum Wage Law (IMWL) claims, finding that both claims were foreclosed by the federal Portal-to-Portal Act of 1947 (PPA), which

amended the FLSA to exclude certain pre-shift activities from compensable time.

On appeal, the employees challenge only the district court's holding that the IMWL incorporates the PPA's exclusions for compensable time. The employees contend that Illinois law affords them broader protections than federal law, and that their IMWL claims therefore should have survived dismissal.

No Illinois decision squarely addresses whether the IMWL integrates the PPA's limitations on pre-shift compensation. Rather than decide this important and unsettled question of state law in the first instance, we certify it to the Illinois Supreme Court. Certification respects federalism and ensures a definitive answer to this dispositive issue.

## I. Background

Amazon owns and operates large distribution warehouses across the country where it fulfills orders made on Amazon.com. The warehouses operate 24 hours a day and employ over 20,000 workers in Illinois alone. Johnson and Miller Anderson both previously worked for Amazon in Illinois warehouses. Both held hourly, non-exempt positions that included moving, stacking, and loading packages.

After the onset of the COVID-19 pandemic in March 2020, Amazon required that all hourly, non-exempt employees undergo COVID-19 medical "screenings" prior to clocking in for their shift. Employees formed a line at the entrance to the facility and underwent a brief examination, which included temperature checks and symptom screening questions. If the employee passed the examination, they were given a mask and only then permitted to clock-in for their shift.

Johnson and Miller Anderson allege that these uncompensated pre-shift COVID-19 screenings took 10-15 minutes on average (and sometimes longer). The screenings occasionally prevented Miller Anderson from clocking in until after her scheduled start time, resulting in a further loss of wages.

Johnson and Miller Anderson sued Amazon claiming that the screening time should have been compensable because employees were required to be on the premises, the screenings were necessary to their work, and the screenings were undertaken primarily for the benefit of Amazon and its customers to keep its fulfillment centers and distribution centers operational. By sustaining a safe workplace, Amazon was able to comply with the law and continue operations during the pandemic, earning profits, and growing its business during a time that many other businesses struggled.

Amazon moved to dismiss the employees' complaint, which the district court granted in full. It held that the FLSA claims were barred by the PPA, which generally excludes from compensable time those employee activities that are "preliminary to or postliminary to" their principal work activities. 29 U.S.C. § 254(a)(2). The district court found that the COVID-19 screenings fell into the preliminary activity exclusion and were not compensable because they were not "integral and indispensable" to plaintiffs' principal activities of "moving boxes, stacking packages, and loading boxes." *Johnson v. Amazon.com Servs., LLC*, No. 1:23-CV-685, 2023 WL 8475658, at *3 (N.D. Ill. Dec. 7, 2023). While the district court recognized that the screenings enhanced worker safety and improved the business's efficiency, it ultimately concluded that they were not essential to overall operations or to employees carrying out their duties as warehouse workers.

With respect to the IMWL claims, the district court summarily concluded that they necessarily failed with the plaintiffs' FLSA claims. It noted that state and federal courts frequently look to case authority interpreting and applying the FLSA for guidance in interpreting Illinois's wage law. It further recognized that a number of district courts, and this Court on one occasion, had previously applied the PPA's exclusions to IMWL claims. *See id.* (collecting district court cases applying the PPA to IMWL overtime claims); *Chagoya v. City of Chicago*, 992 F.3d 607, 614 n.22 (7th Cir. 2021) (assuming, based on the parties' agreement, that the PPA applied to the plaintiffs' IMWL claims).

Plaintiffs timely filed this appeal, challenging the dismissal of their IMWL claims alone. We have subject matter jurisdiction over this appeal under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

## II. Discussion

We review de novo a district court's decision to grant a Rule 12(b)(6) motion to dismiss. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The issue on appeal is whether the district court erred by finding that the IMWL excludes certain pre-shift work from compensation. Given the lack of state court authority, plaintiffs ask us to certify to the Illinois Supreme Court the question of whether the IMWL incorporates the limitations of the PPA. Alternatively, they ask that we reach the merits of this statutory interpretation question and affirmatively hold that the IMWL does not include the PPA's exclusions. Amazon argues that certification is unnecessary because existing federal and state authority support the district court's conclusion.

In reviewing the parties' arguments, we find that both have presented plausible arguments and that the most prudent approach is to certify the question to the Illinois Supreme Court. First, however, a bit of background on the statutory framework of the FLSA, PPA, and IMWL is helpful to set the context for the parties' debate.

**A. Federal and state law standards for compensable time.**

The FLSA, enacted in 1938, established broad minimum wage and overtime compensation protections for workers. The overtime provision relevant here provides that, subject to certain exceptions, "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).[1]

The original text of the FLSA left many key terms undefined, including what constitutes a "workweek" for purposes of compensation. *See Chagoya*, 992 F.3d at 616. In the absence of statutory definitions, the Supreme Court initially interpreted compensable work broadly, defining the statutory workweek as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery*

---

[1] Plaintiffs' IMWL claims seek unpaid overtime wages, so our discussion centers around that statutory requirement. Of course, the PPA excludes compensation for preliminary and postliminary activities whether paid at the minimum wage or overtime rate. Whether the IMWL incorporates the PPA's compensation exclusions thus likely carries implications beyond the overtime claims at issue here.

*Co.*, 328 U.S. 680, 690–91 (1946); *see also Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944) (defining "work" as any "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business").

The Supreme Court's holdings in *Anderson* and *Tennessee Coal* "provoked a flood of litigation," which prompted Congress to enact the PPA to walk back the Court's expansive definition of compensable work and limit employers' potential liability. *Chagoya*, 992 F.3d at 616 (citation omitted). Among its changes, the PPA amended the FLSA to create two categories of work-related activities for which employers were not liable:

> (a) … [N]o employer shall be subject to any liability or punishment … on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of …
>
>> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>>
>> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a). In short, under the PPA "ordinary commute times and preliminary and postliminary activities that occurred before or after the workday were no longer compensable activities under the FLSA." *Chagoya*, 992 F.3d at 617. Instead, the FLSA as amended applies only to an employee's "principal activities." *Id.* at 618.

As for what constitutes a principal activity, the Supreme Court has explained that principal activities include the activity or activities that an employee is employed to perform, as well as those activities which are "integral and indispensable" to the work the employee was employed to perform. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014). An activity is "integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* If a preliminary or postliminary activity is not integral and indispensable to an employee's principal activity, compensation is not required. *See id.* at 33–35.

Congress also specifically recognized that individual states retained the authority to enact their own broader protections. The FLSA contains a savings clause that expressly provides that nothing in the statute excuses an employer's noncompliance with state or local requirements that are more generous than the federal law. *See* 29 U.S.C. § 218(a).

Turning to Illinois law, the Illinois General Assembly enacted the IMWL in 1971 to enshrine minimum wage and overtime protections in state law. The IMWL's language parallels the FLSA in many respects, including in the overtime-wage provision, which provides that "no employer shall employ any of his employees for a workweek of more than 40 hours

unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4a(1).

Like the FLSA, the IMWL does not define "workweek" for the purpose of determining what qualifies as compensable time. To fill the gap, the IMWL empowers the Director of the Illinois Department of Labor (DOL) to promulgate regulations defining key terms and concepts. 820 ILCS 105/10. Relevant here, the Illinois DOL regulation at section 210.110 defines "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." ILL. ADMIN. CODE tit. 56, § 210.110. If that language sounds familiar, it is because it parallels the Supreme Court's definition of the statutory workweek under the FLSA in *Anderson*. 328 U.S. at 690–91. Section 210.110's definition of "hours worked" goes on to describe the circumstances under which employees are entitled to compensation for meal periods, on-call time, and travel time.

Section 210.110 makes a single indirect reference to the PPA, specifically incorporating the PPA regulations governing the compensability of travel time. ILL. ADMIN. CODE tit. 56, § 210.110 ("An employee's travel, performed for the employer's benefit … is compensable work time as defined in 29 CFR 785.33 – 785.41 ….").

Finally, the regulations implementing the IMWL also provide that the Director of the Illinois DOL may look to FLSA

regulations for guidance in interpreting and enforcing the IMWL. *Id.* at § 210.120.

## B. Whether the IMWL incorporates the PPA's exclusions for preliminary and postliminary activities.

With this legal framework in mind, we turn next to the parties' arguments on appeal. Plaintiffs lead with their request for certification. But before reaching certification, we must first examine whether the district court correctly held that the federal standards for compensable time under the PPA applied to plaintiffs' IMWL claims. This is our necessary starting point because we should only certify a question to a state supreme court if we "find ourselves 'genuinely uncertain' about the answer to the state-law question." *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 557 (7th Cir. 2023) (citation omitted). We therefore first examine the parties' competing arguments on whether the IMWL excludes compensation for preliminary and postliminary activities like the PPA.

In interpreting the IMWL, we apply Illinois rules of statutory construction. *See Zahn*, 815 F.3d at 1089. Our primary objective is to "ascertain and give effect to the intent of the legislature," and "[t]he best evidence of legislative intent is the statutory language." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (quoting *People v. Donoho*, 788 N.E.2d 707, 715 (Ill. 2003)). When assessing legislative intent, "courts should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought." *Id*. "Statutory provisions should not be read in isolation but 'as a whole; all relevant parts of the statute must be considered when courts attempt to divine the legislative intent underlying the statute.'" *Id*. (citation omitted).

Beginning with the statutory text, plaintiffs correctly note that the PPA's compensation exclusions are absent from the state statute. Both the IMWL and FLSA include nearly identical overtime requirements—requiring time-and-a-half pay for hours worked in excess of 40 hours a week. But while the PPA amended the FLSA to exclude preliminary and postliminary activities from compensation, the IMWL contains no such exclusion. Nor does the IMWL have language comparable to the PPA establishing an employees' "principal activities" as the metric for measuring compensable time. Given that the "best evidence of legislative intent is the statutory language," the absence in the IMWL of the express statutory exclusions found in the PPA might suggest that the Illinois General Assembly did not intend to incorporate those same limitations in the IMWL. *See Donoho*, 788 N.E.2d at 715.

We can find further evidence of legislative intent by utilizing the familiar statutory canon *expressio unius est exclusio alterius*, or "the expression of one thing is the exclusion of another." *See Metzger v. DaRosa*, 805 N.E.2d 1165, 1172 (Ill. 2004) (citation omitted). The drafters of the IMWL chose to reference and incorporate other exclusions and limitations found in the FLSA into the overtime provision of the IMWL. *See, e.g.*, 820 ILCS 105/4a(2)(E) (stating that the overtime requirements do not apply to "[a]ny employee employed in a bona fide executive, administrative or professional capacity, including any radio or television announcer, news editor, or chief engineer, a*s defined by or covered by the Federal Fair Labor Standards Act*" (emphasis added)); 820 ILCS 105/4a(2)(D) (excluding "[a]ny commissioned employee as described in [the FLSA]"). That the legislature adopted some provisions of the FLSA,

and not others, supports the plaintiffs' position that the omission of the PPA's exclusions was deliberate.

To be sure, statutory silence only takes us so far. Like the FLSA, the IMWL does not define the "workweek" for the purpose of determining whether an employee is owed overtime pay in a given week. Does the ambiguity in the IMWL's undefined terms suggest it incorporates the PPA's exclusions, given the identical state and federal statutory overtime provisions? Perhaps. To answer that question, we must turn next to the regulations implementing the IMWL.

As discussed above, section 210.110 of the Illinois Administrative Code defines "hours worked" under the IMWL as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any additional time he or she is required or permitted to work for the employer." ILL. ADMIN. CODE tit. 56, § 210.110. This administrative rule carries "the force and effect of law" and is entitled to deference so long as it is "not inconsistent with the statute pursuant to which [it was] adopted." *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. Ct. 2011) (citing *Kean v. Wal–Mart Stores, Inc.*, 919 N.E.2d 926 (Ill. 2009)).

Plaintiffs argue that section 210.110's definition of "hours worked" resolves the question presented on appeal. They note that this definition mirrors the pre-PPA definition of work from the United States Supreme Court's decision in *Anderson* (the definition that Congress sought to curtail with the PPA), and they argue that Illinois's expansive definition demonstrates that compensable work under the IMWL is not subject to the limitations found in the PPA. Plaintiffs also

point out that the Illinois DOL expressly adopted and referenced other federal standards, including the PPA's travel time regulations, in other parts of section 210.10. By including an express reference to the PPA's travel time regulations but failing to reference the preliminary and postliminary activity exclusion, plaintiffs maintain that the Illinois DOL was signaling that the latter was deliberately left out.

Plaintiffs' arguments with respect to section 210.110 are well-taken, and the regulatory definition of "hours worked" seems to support their position that the IMWL does not incorporate the preliminary and postliminary activities exclusions found in the PPA. But as Amazon notes, section 210.110 is not the only relevant regulation at issue. Amazon separately points to section 210.120, the provision instructing that the Director of the DOL may look to FLSA regulations for guidance in interpreting the IMWL. Amazon also correctly observes that a number of courts, including Illinois appellate courts and this Court, have relied on this regulation to construe the IMWL consistent with federal standards. The argument goes that if the Illinois agency tasked with enforcement and implementation of the IMWL is to look to federal law for guidance, so too should the courts interpreting the statute. Amazon thus argues that this regulatory instruction to look to federal law, when read in tandem with the underlying parallel overtime provisions in each statute, supports finding that the preliminary and postliminary activities exclusion under the PPA applies to overtime claims under the IMWL.

Amazon's argument here has some traction. We have recognized that, in light of the parallel overtime provisions in the IMWL and FLSA, and the instructions in section 210.120 of the Illinois regulations, courts can look to federal standards

under the FLSA to analyze overtime claims brought under the IMWL. *See, e.g.*, *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) ("Illinois courts (and likewise, therefore, federal courts administering Illinois law) seek guidance in the federal case law interpreting the Fair Labor Standards Act." (citing ILL. ADMIN. CODE tit. 56, § 210.120)); *Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) ("The overtime provision of the [IMWL] is parallel to that of the FLSA, and Illinois courts apply the same principles … to the state provision."). Illinois appellate courts have consistently recognized this same principle. *See Kerbes*, 961 N.E.2d at 870 ("[C]ourts have recognized that in light of their substantial similarities, provisions of the FLSA and interpretations of that legislation can be considered in applying the Minimum Wage Law." (citations omitted)). And in a recently issued opinion, the Illinois Supreme Court confirmed that "[t]he Department's regulations provide that federal guidance as to the meaning of the [FLSA] is probative of the meaning of the [IMWL]." *Mercado v. S&C Elec. Co.*, 2025 IL 129526, ¶ 33, 2025 WL 285291, at *7 (Ill. 2025). There is thus fairly strong support for Amazon's general proposition that we can and should look at federal law to interpret the scope and meaning of the IMWL.

Amazon is also correct that we have previously applied the preliminary and postliminary exclusion under the PPA to state law claims under the IMWL, but that proposition is not binding on us here. *See Chagoya*, 992 F.3d at 615 n.21. In *Chagoya*, the plaintiffs sought compensation under the FLSA and IMWL for time spent transporting equipment before and after their shifts. *Id.* at 614. We explained in a brief footnote that, because the parties agreed the same standards applied to both the federal and state law claims, we would analyze them

together. *Id.* at 615 n.21. Amazon argues that this footnote is an affirmative holding of this Court that the standards under the PPA apply to the IMWL. But that argument goes too far. Our decision in *Chagoya* to apply the same standards was an assumption made based on the parties' agreement, devoid of any legal analysis, and is therefore not precedential. *See Matter of Volpert*, 110 F.3d 494, 497 (7th Cir. 1997) (citing *Webster v. Fall*, 266 U.S. 507, 511 (1925)) (noting that an assumption by a prior panel did not amount to binding precedent where the prior panel did not discuss the issue). *Chagoya* thus does not, by itself, resolve the question here.

Still, setting aside the Court's non-binding assumption in *Chagoya*, there is a well-established trend of looking to federal authority and standards to interpret and apply the IMWL, especially where the language of the statutes is parallel and Illinois caselaw is silent on an issue. *See Kerbes*, 961 N.E.2d at 870; *Driver*, 739 F.3d at 1075; *Urnikis-Negro*, 616 F.3d at 672 n.3; *see also Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 745 (Ill. App. Ct. 2009) ("When, as in this case, there is an absence of Illinois case law interpreting an Illinois wage statute, a court may look for guidance to federal cases interpreting an analogous federal statute, namely the Fair Labor Standards Act ….").

Of course, as plaintiffs emphasize, none of the cases cited by Amazon applying Illinois law (beyond the non-binding *Chagoya* footnote) involved the same exclusions at issue here under the PPA. And none of the cases involved a situation comparable to what Amazon asks us to do here—to import a FLSA *statutory* exclusion into the IMWL where it does not

exist and an IMWL regulation suggests the opposite.[2] Instead, those cases look to federal regulations or precedent for guidance when both the FLSA and IMWL speak in tandem (or are silent) on the relevant topic. That is not the case here: while the underlying overtime provisions in both statutes are identical, there is a relevant and express statutory exclusion from compensable time in the federal statute that is not present in the state statute. There is a difference between applying federal regulations and caselaw to interpret parallel state statutory or regulatory language (the typical situation in the caselaw) and importing federal statutory exclusions into the state statute where they are not otherwise found (and where the regulations are in tension with the statutory exclusion).

Furthermore, a general practice of looking at federal authority under the FLSA to interpret the IMWL does not require that the IMWL and FLSA be read identically in every

---

[2] Amazon relies on a Sixth Circuit case applying the same exclusions under the PPA to Kentucky's wage and hour statute, but the differences between the Kentucky and Illinois regulatory regimes make that case distinguishable. *See Vance v. Amazon.com*, 852 F.3d 601, 613 (6th Cir. 2017). The Sixth Circuit concluded that the PPA's preliminary/postliminary limitations were incorporated into Kentucky law, primarily because the Kentucky wage regulations expressly reference the FLSA travel time and waiting time rules under the PPA. *See id*. But unlike the Illinois regulations, the Kentucky regulations use the same "principal activity" language as the PPA in defining the circumstances under which travel time is compensable. Unlike here then, there was a direct connection between the Kentucky regulatory definition of work and the limiting language in the PPA such that it might make sense to incorporate all of the PPA's limitations into the Kentucky statute. That connection is missing here because, as noted above, the Illinois regulations define the workweek in dramatically broader terms than the PPA without referencing the "principal activity" metric.

case. Because of the FLSA's savings clause, "federal law does not preempt the state law if the latter is more generous," and an employer can run afoul of state wage law for practices that do not otherwise violate federal law. *See Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 838 (7th Cir. 2014) (citations omitted). And Illinois courts have recognized that, although federal law may be instructive authority in interpreting the FLSA, it is not necessarily controlling where the statutory language is different. *Soucek v. Breath of Life Pro. Servs., NFP*, 205 N.E.3d 788, 799 (Ill. App. Ct. 2021) ("As this court has emphasized before, Illinois minimum wage law is not identical to the FLSA." (cleaned up)). It is thus not dispositive to say that the statutory overtime provisions are parallel and that courts generally look to federal standards to interpret the IMWL. Instead, where the statutory language is different—the PPA's exclusions are not in the IMWL—federal authority is persuasive at best but not controlling.

Ultimately, we need not resolve the tension created by the statutes, regulations, and caselaw. Our goal in interpreting state law is to decide an issue as we predict the Illinois Supreme Court would decide it. *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016). But in cases where the parties have presented plausible competing arguments on an issue of tremendous significance to the state that make that prediction uncertain, we have another tool at our disposal that respects federalism: certification. In light of the parties' reasonable positions outlined above, and the other relevant considerations below, we find that certification to the Illinois Supreme Court is warranted.

### C. Whether to Certify the Question.

"Federal courts may ascertain the content of state substantive law while sitting in diversity, but we sometimes certify a question of state law based on several factors." *Finite Res., Ltd. v. DTE Methane Res., LLC*, 44 F.4th 680, 685 (7th Cir. 2022). The most important factor in deciding whether to grant certification is "whether we feel genuinely uncertain about an issue of state law." *Id.* (citation omitted). Other additional considerations include whether (1) the case concerns a matter of vital public concern, (2) the issue is likely to recur in other cases, (3) the question to be certified is outcome determinative of the case, and (4) the state supreme court has yet to have an opportunity to illuminate a clear path on the issue. *Id*. (citations omitted). Consideration of these factors ensures "that federal courts will not overburden state courts with requests for certification when what is required is not the promulgation of new law but rather, the exercise of a court's judgment." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001).

Here, our consideration of the applicable factors all weigh in favor of certification. First, whether the IMWL incorporates the PPA's preliminary and postliminary activities exclusion is unresolved, and we are uncertain as to how the Illinois Supreme Court would decide the issue given the competing authorities and plausible arguments on both sides. The absence of any Illinois authority remotely on point, including any intermediate appellate authority, cautions us against guessing how the Illinois Supreme Court would resolve the question in the first instance.

The remaining factors likewise all weigh in favor of certification. The question is of vital public concern and is likely to

recur. Whether an employee's IMWL wage claim for mandatory pre-shift activities like Amazon's medical screenings fall under the PPA's exclusions, or a more expansive state law standard, is of profound significance to workers and employers in Illinois. As alleged, Amazon alone has tens of thousands of warehouse workers in Illinois, and there are likely thousands of other similarly situated employees across numerous other industries that have been required to participate in pre-shift activities on their employer's premises. It is vitally important for these workers and their employers to have clarity on the compensability of these types of pre-shift activities under the IMWL. Until the Illinois Supreme Court resolves the issue, workers will likely continue to bring suits raising the same question.

Additionally, whether the preliminary/postliminary activity exclusions under the PPA apply to the IMWL is dispositive of plaintiffs' claims. Plaintiffs conceded on appeal that their FLSA claims fail because of the PPA's preliminary activity exclusion, and they have not challenged the district court's conclusion that the screenings were not integral and indispensable to plaintiffs' principal work activities as warehouse workers. If those same standards apply to plaintiffs' IMWL claims, those state law claims necessarily fail. But if the PPA standards do not apply, then plaintiffs' claims appear subject only to the limitation provided in the Illinois DOL regulations, which define "hours worked" as "all the time an employee is required to be … on the employer's premises." ILL. ADMIN. CODE tit. 56, § 210.110. The question of whether the PPA applies is thus dispositive of whether plaintiffs' claims can survive dismissal.

Amazon's counter points on this factor are not persuasive. Amazon contends that, if the PPA does not apply, plaintiffs' time is only compensable if it was primarily for the benefit of their employer, the standard established by the pre-PPA Supreme Court case of *Tennessee Coal*. *See* 321 U.S. at 590. Amazon argues that plaintiffs have already conceded that their time spent in the medical screenings was not compensable under this standard, because they have not challenged the district court's conclusion (with respect to their FLSA claims) that the screenings were primarily for the benefit of employee safety, not the benefit of Amazon.

But absent the exclusions under the PPA, it is not apparent that plaintiffs' IMWL claims would be subject to the "primarily for the benefit of the employer" test for compensation from *Tennessee Coal*. Rather, the claims would appear subject to section 210.110 of the Illinois DOL regulations, which generally mirrors *Anderson*'s broad definition of compensable work. Of course, the Illinois Supreme Court might also prescribe a different rule or standard altogether. We need not speculate as to other approaches the Court might take, because the possibilities just further demonstrate why certification is warranted. What matters is that if the PPA applies, plaintiffs' IMWL claims fail. If it does not, they could survive under a different standard. The answer to the question is thus dispositive.

Finally, the last factor also weighs in favor of certification. The Illinois Supreme Court has not yet had an opportunity to pass on this question of great importance to workers and businesses. As the final authority on matters of Illinois statutory interpretation, the Illinois Supreme Court should decide the question. Certification is appropriate to respect cooperative

federalism and to ensure a definitive answer to this unsettled question of state law.

### III. Conclusion

For the forgoing reasons, we respectfully request that the Illinois Supreme Court answer the following certified question:

> Does the Illinois Minimum Wage Law, 820 ILCS 105/4a, incorporate the exclusion from compensation for employee activities that are preliminary or postliminary to their principal activities, as provided under the federal Portal-to-Portal Act 29 U.S.C. § 254(a)(2)?

Nothing in this opinion should be construed to limit the Illinois Supreme Court's inquiry, and we welcome the Justices reformulating the question to suit their review.

Accordingly, the question is CERTIFIED. All further proceedings in this Court are STAYED while the Illinois Supreme Court considers this matter.